ISAAC WHEATLEY *v.* JOSEPH C. ABBOTT and WIFE.

1. GIFT: DELIVERY ESSENTIAL TO.—The rule is well settled, that there can be no valid *parol* gift of a personal chattel unless there be an actual delivery of possession to the donee; or, an absolute parting with all dominion and ownership over it by the donor, for the use and benefit of the donee; and without this, a mere intention to give, however strongly manifested, will not divest the donor's title. 2 Kent. Com. 438.

2. SAME.—The mere declaration of the donor, that he *has made* a gift of a personal chattel, unaccompanied by acts showing a delivery, or an absolute parting with all dominion and interest in it, are insufficient to establish a valid gift; and especially where his acts are inconsistent with his having parted with the possession and control over the chattel. 7 S. & M. 428; 1 Kelly, (Ga.) 595.

APPEAL from the District Chancery Court at Holly Springs. Hon. James F. Trotter, vice-chancellor.

The pleading and evidence are very fully set out in the opinion of the court.

*A. M. Clayton,* for appellant,

Cited *Anderson* v. *Baker,* 1 Kelly, 595; 2 Kelly, 297; *Gordon* v. *Green,* 10 Ga. R. 543; *Wyche* v. *Green,* 11 Ga. 177.

*O. Davis,* for appellee,

Cited *Grangiac* v. *Arden,* 10 J. R. 293; *Carradine* v. *Collins,* 7 S. & M. 428; *Young* v. *Young,* 25 Miss. 38; *Caldwell* v. *Wilson,* 2 Spears, R. 75; *Hillebrant* v. *Brewer,* 6 Texas, R. 45.

*F. Anderson,* on same side,

Cited 2 Hills, (S. C.) R. 547.

HANDY, J., delivered the opinion of the court.

The substance of the original bill in this case is, that Rebecca Catharine Kenley, since intermarried with Joseph C. Abbott, being a minor, and niece of one Hugh B. Tomlinson, and residing in Tennessee, was brought by her uncle to the state of Georgia, under a promise that he would educate her and give her a negro girl slave; that upon her arrival at his place of residence in Georgia, in the presence of the family, he gave her the slave in controversy, who remained with her about three years in the family of a brother of Hugh B. Tomlinson, where she resided, as well as the said Hugh, and was regarded by the whole family as her property, he declaring frequently that the slave was absolutely her property; that in the summer of 1841, he removed his slaves from Georgia to Mississippi, in order to avoid the payment of security debts, and took with them the slave in controversy, his niece being of too tender years to take control of her and having no guardian; and that he sold all of his own slaves, and placed Kate, the slave in controversy, in custody of his mother, Mrs. Tomlinson, then residing with her son-in-law, Henderson, to wait on her during her life, unless called for by him or his niece; and upon condition, that if not called for by him the slave should be delivered over to his niece upon the death of his mother, as her absolute property, and was regarded by the whole family as her property, the mother of Hugh B. Tomlinson only claiming to keep the slave during her life, and admitting that she was to be the property of the niece on her death; and shortly after this, that he returned to Georgia and died, and his mother died in the year 1844, having until that time held possession of the slave; that, induced by fraudulent representations made by Wheatley, the complainants executed to him in the year 1845, a bill of sale for the slave, intending thereby to convey only the share which they held in the slave as distributees of Hugh B. Tomlinson; but that the conveyance is void, not being made in conformity to the requirements of the statute in relation to conveyances by married women.   The bill prays a delivery of the slave to the complainants, and an account for hire; and in the alternative, if she should be considered as the property of the estate of Tomlinson, that she be sold and their share as distributees of the estate be awarded.

The answer of Wheatley denies the alleged gift and all fraud in obtaining the bill of sale of the complainants for the slave, and alleges that at that time, they did not pretend to have any other claim to her than a distributive share, and for that interest, that he paid a full and fair value.

The issue upon which the rights of the parties in this case depend, is, whether there was a valid gift of the slave by Tomlinson in his life-time to the wife of the complainant; and this involves the question, whether there was such a delivery of possession to her as is necessary to constitute a valid gift of such property.

The rule by which this question is to be determined is probably as universally agreed on as any in the law. And there is no material difference between the rule upon the subject as held by this court and that held in the State of Georgia. The fact that the rule is sometimes stated with more or less stringency, is to be ascribed to the nature of the chattel to which it is applied in the particular case, rather than to the uncertainty of the rule itself. But it may be safely stated, that there can be no valid parol gift of a chattel, unless there be an actual delivery of possession to the donee, or an absolute parting of all dominion and ownership over it by the donor for the use and benefit of the donee; and without this, a mere intention to make the gift, however strongly manifested, will not divest the donor's title. 2 Kent, Com. 438. Hence, it has been held, that mere declarations of the owner that he has made the gift, unaccompanied by acts showing a delivery of possession, or an absolute parting with all dominion and interest, are not sufficient to render the gift valid. *Canadine* v. *Collins*, 7 S. & M. 428 ; *Anderson* v. *Baker*, 1 Kelly, (Ga.) 595. Much less can such declarations establish a gift, when the acts of the owner are inconsistent with his having parted with the possession and control of the property. In such cases the declarations cannot have greater force than as mere circumstances, which may be considered, together with all other circumstances attending the transaction, and the conduct of the owner in relation to the property, in determining the question whether there was an actual delivery of possession, or a parting with all ownership of the property.

We will proceed to consider the evidence relied upon to establish the gift in this case, with reference to these principles.

It appears that Tomlinson, who was unmarried, resided with his brother's family in Georgia, and that his niece, the complainant, lived there after she was brought from Tennessee; that he frequently declared to different persons that he had given the slave Kate to his niece, and expressed his attachment to her, and his intention to support and educate her, and that he regarded and treated her as if she had been his own child. It is also stated by several witnesses, that Wheatley had admitted that he knew that Tomlinson had given the slave to his niece. Declarations made by the mother of Tomlinson, in whose possession the slave was left in this State; and by his sister, Mrs. Henderson, are also shown, to the effect, that the slave had been given by Tomlinson to his niece when they were both children. But these statements of other persons, are not competent evidence against Wheatley, and are not to be regarded.

On the contrary, it does not appear that the slave was ever in the possession of the niece, or of any one for her; or, that she was at the house of Tomlinson's brother, where he and his niece resided. He never stated to that brother, that he had given the slave to his niece. It appears that after the alleged gift, he had his slaves, including Kate, removed to Alabama, for the purpose of avoiding their being subjected to his debts; that they were afterwards all brought back, and at a later period, he had them removed to this State for the same reason; that after the time of the alleged gift, he repeatedly asserted in various ways, his ownership of the slave, and his intention never to part with her. He stated to his brother on his death bed, that he had sold all his slaves except Kate, and that he had left her with his sister and his mother, who lived together, and that he wished his brothers so to arrange it, that his niece would have the slave Kate.

It thus appears that, whilst the declarations of Tomlinson in relation to the gift of the slave to his niece, as shown by the witnesses, are altogether inconsistent and irreconcilable, his acts plainly show, that he had not parted with either the possession or ownership of the slave during his life; and his last act in relation

to her, shows clearly, that he did not consider that she was then the property of his niece. His declarations can only be accounted for, upon the supposition that he was misunderstood by the witnesses, and that he really expressed only an intention to make the gift to his niece. This renders his declarations, as proved by the appellant's witnesses, consistent with his acts, and removes all doubt as to the condition of the property. When we consider his conduct in connection with the fact, that there is no evidence to show that the slave was in the possession, use or control of the niece, either solely or jointly with Tomlinson, the conclusion is not to be avoided, that she never had such possession as was necessary to constitute a valid gift.

This conclusion is strengthened by the fact, that long after the death of Tomlinson, the complainants did not claim title to the slave under the alleged gift, which is stated to have been well known; but, on the contrary, claimed only a share in her as distributees of his estate, and undertook to sell and convey that interest to the appellant.

Several other points have been raised and discussed by counsel; but, as the merits of the case are disposed of in the above view of it, we deem it unnecessary to consider them.

The decree must be reversed, and the bill dismissed.