DULING, et al. *v.* DULING'S ESTATE, et al.

Division A. Apr. 16, 1951.

No. 37917 (52 So. (2d) 39)

468

**Alexander & Alexander,** for appellants Albert and Kittie R. Duling.

**Byrd, Ricketts & Wise,** for appellee and cross-appellant, Mrs. Mary Louise Hutchins.

**Green, Green & Cheney,** for cross-appellant Old Ladies Home Association.

**McGehee, C. J.**

This controversy arose in the administration of the estate of Miss Lorena Duling, deceased, who was for many years a very highly respected and capable teacher in the city schools of Jackson, and the executor of whose last will and testament, Stokes V. Robertson, Jr., peti-

tioned the chancery court for an adjudication as to the ownership of the contents of a certain safe deposit box which had been leased by Miss Duling and her two brothers, Albert and Charles H. Duling, from the Capital National Bank, at Jackson, and which deposit box contained the sum of $4,000 in cash at the time of the death of Miss Duling, which was kept in an envelope on the outside of which there appeared the notation "Payment on Madison Property" and the figures $4,050 with $50 deducted therefrom. There were also some souvenir spoons and certain trinkets kept in this deposit box.

The petition of the executor asked that there be summoned as defendants thereto the following: namely, Mrs. Mary Louise Hutchins, who was claiming the fund as a close friend, associate teacher, and alleged donee of Miss Duling, and also the Old Ladies Home, both of Jackson, Mississippi, together with the two brothers of the deceased, to wit, Albert Duling and Charles Duling of Nashville, Tennessee, who were her two sole surviving heirs at law, in order that they could appear and present their respective claims.

A separate answer was filed by the claimant, Mrs. Hutchins, wherein she asserted her right to the contents of this deposit box under and by virtue of an alleged gift thereof to her by Miss Duling in her lifetime, and as being evidenced by two letters in the handwriting of the alleged donor dated August 6, 1946, one addressed to her brother, Albert Duling, and the other to her brother, Charles Duling, and she also claimed the same by virtue of repeated statements alleged to have been made to her in that behalf by the donor on different occasions prior to her death, the time of the making of one statement only being alleged in the answer of this claimant. It is not claimed that this alleged gift was completed during the lifetime of the donor, but that "her brothers, or either or both of them" were directed "to make this gift effective after her death through the delivery of such money to the said Mary Louise Hutchins."

The Old Ladies Home merely entered an appearance and filed no answer, but relied upon the asserted right of the executor to the contents of the deposit box as a part of the assets of the estate of Miss Duling, who died June 18, 1949, leaving most of her estate to the Old Ladies Home.

In his petition the executor alleged that he believed that the contents of said deposit box, especially of cash found therein, were assets of the said estate which it is his duty as executor to administer under the direction of the court and under the authority of the last will and testament of Miss Duling, dated September 1, 1948, wherein she devised and bequeathed unto her friend, Mrs. W. F. Marshall, with whom she resided, and to another friend, Mrs. Fannie Patterson, each, an article of personal property, and to the Old Ladies Home, in Jackson, a long list of furniture, rugs, bedding, a refrigerator, and other articles of personal property listed in the will, and directed the executor to sell "all other furniture, silverware, cut glass, house furnishings, and equipment of every kind and character, and to turn over the proceeds thereof to the Old Ladies Home, together with any other cash that I may possess." No reference is made to the claimant, Mrs. Hutchins, under the terms of the will; nor does it contain any reference to either of her brothers or to the contents of said deposit box.

A joint answer was filed to the petition of the executor by Albert Duling and Kittie R. Duling, she being the widow and sole surviving heir at law of Charles Duling who had died at 77 years of age, after the filing of the petition and prior to the filing of the answers thereto. They asserted their rights as joint owners of the contents of the deposit box under and by virtue of a joint tenancy agreement duly executed on November 12, 1943 by the said Lorena Duling and her brothers, Albert and Charles Duling, and which provided for the right of survivorship in any money thereafter placed in said deposit box by

either of the parties to the joint tenancy agreement, the pertinent part of which agreement is as follows:

"It is agreed between the undersigned, lessees of Box No. 106, located in the safe deposit vault of Capital National Bank in Jackson that all property at any time heretofore now or hereafter placed or contained in said box now does and shall, so long as it is contained therein, belong to the lessees jointly as joint tenants with right of survivorship therein, and may be withdrawn and removed therefrom, in whole, or in part, by all, or any one or more of the lessees; and upon the death of any one or more of the lessees and upon every such death the title to all property then contained in said box shall be in the survivors jointly, with the right of survivorship therein, or in the sole survivor if there be one, and such survivors, or survivor, and any one or more of them, subject to the restrictions contained in the laws of the State of Mississippi with reference to inheritance tax, shall have the right to remove from said box all or any part of the property contained therein.

"The lessees further agree on behalf of themselves, their respective heirs, executors, administrators and assigns, that Capital National Bank in Jackson, under no circumstances whatsoever shall be liable on account of the removal by any one or more of the lessees of all or any part of the contents of said box, either before or after the death of any one or more of the lessees."

The above quoted provisions of the agreement are prefaced by the following note of warning in parentheses, to wit: "Do not execute this agreement unless you are joint owners of the contents of box and desire the survivor, or survivors, to become the sole owners thereof in case of the death of any of yon."

Thus it will be seen that the foregoing agreement was not intended merely for the protection of the bank, but also to evidence the respective rights of the signers thereof in the contents of the deposit box.

On June 20, 1949, the second day after the death of Miss Duling, it appears that Charles Duling, who was in Jackson to attend her funeral, went to the Capital National Bank and was duly and lawfully permitted by it to withdraw the contents of the deposit box under and by virtue of the authority of the said joint tenancy agreement.

After Charles Duling had removed the contents of the deposit box, he carried the same to his hotel. Thereafter he had a conversation at the Wright and Ferguson Funeral Home with the claimant, Mrs. Hutchins, wherein she told him that Miss Duling desired for her to have the money that was in the deposit box and had told her so on several occasions, and was insistent that he turn the money over to her, with the result that he returned to his hotel, got the money, and later went back to the funeral home and delivered the same to said claimant, who later paid the $4,000 into the registry of the court to abide the order of the chancellor.

We learn of this conversation and the thoughtless action of Mr. Duling, in turning this fund over to the said claimant, only through the testimony of the executor, who was the only competent witness in that behalf.

The executor testified that although he did not know about the deposit box or its contents at the time he wrote the will of the deceased, he learned, after her funeral, when checking with the bank, that there was such a deposit box and that the same had been emptied and surrendered; that he then wrote to Mr. Charles Duling and requested that he come back to Jackson in regard to the matter. The executor stated that:

"He came down a few days later. I talked to him about what I had discovered and at that time he told me he had gone into the box and there was $4000.00 in cash in an envelope marked on the outside 'Sale of Madison property' and the figures $4,050. and right under that $50. deducted, a line drawn and $4,000 in figures on the outside of that envelope, and that he had found that in the

safe deposit box and had taken it out together with some souvenir spoons and other trinkets Miss Duling had in the box; that he had taken that, and on June 20, 1949, at the Funeral Home, he had seen a Mrs. Mary Louise Hutchins, who had stated she was a close friend of Miss Lorena Duling and that Mrs. Hutchins had told him Miss Duling desired for her to have this money in the safe deposit box and was insistent in that respect, and that Miss Duling had wanted her to have it, had told her that on several occasions, and that he, Charles Duling, had turned this $4,000.00 in the envelope over to Mrs. Hutchins, and that prior to surrendering it to Mrs. Hutchins he took the contents to his hotel room in Jackson and then carried it to Wright and Ferguson Funeral Home and there delivered it to Mrs. Hutchins, as I understood it. I believe that is about all the gist of that conversation except, of course, wondering what would be the proper procedure.''

The envelope which had contained the money was introduced in evidence and contained the following:

''$4050 PAYMENT ON MADISON PLACE
 50

 _____

 4000''

During the conversation between the executor and the said Charles Duling on his return to Jackson, the latter produced in justification of his action in removing the contents of the deposit box, the following instrument written in his own handwriting with pencil, but admittedly signed by his sister, Miss Duling:

''Jackson, Miss.
''Dec. 15th 1947

''To Whom It May Concern:

''I, Lorena Duling, today bequeath to Charles H. Duling the entire contents of my safety box (#106) at the Capitol National Bank at Jackson, Miss., without any qualification or reservation.

''(signed)
''Lorena Duling''

On that occasion he made no reference to the joint tenancy agreement, the terms of which he may have forgotten due to the infirmities of age and his state of ill health. At any rate, if he had the terms of the joint tenancy agreement in mind at the time, he would have needed nothing else to justify his action in withdrawing the contents of the deposit box when explaining his action to the executor and showing him the instrument of writing last above quoted. But be that as it may, there is no competent evidence as to the circumstances under which the above-quoted instrument was executed, except that the signer thereof was then in the hospital, and it appears from the answer of the claimant, Mrs. Hutchins, that she claims that on that same day, December 15, 1947, Miss Duling stated to her that she wanted her to have the contents of this deposit box.

The deposition of Albert Duling, who was 81 years of age, (in regard to the purpose for which this money, which represented the proceeds of the sale of some real estate at Madison, Tennessee, conveyed during the year 1945, and disclosing that he and Charles allegedly owned an equitable interest therein by virtue of the transaction under which the land was acquired and the title placed in the name of their sister, Miss Duling, until sold; and also in regard to the purpose for which the sum was placed and to be kept in the deposit box), was properly excluded as relating to transactions which occurred during the lifetime of the deceased, and for the reason that Section 1690, Code of 1942, provides that: "A person shall not testify as a witness to establish his own claim or defense against the estate of a deceased person which originated during the lifetime of such deceased person . . ." Likewise, the offer of the claimant, Mrs. Hutchins, to testify "as to the matters and things set out in her claimant's petition (meaning in her answer wherein she presented her claim to the fund)," was properly excluded on the same ground.

The sworn answer and claim of Mrs. Hutchins, the oath to which was not waived by the petition of the executor, alleged that prior to the holding of the funeral services for Miss Duling, the said claimant was advised by Charles Duling that he had entered the deposit box in question and had removed the contents therefrom; that she made no demands upon him except to state in the conversation at the Wright and Ferguson Funeral Home that she "hoped that he would carry out Miss Duling's wishes;" that she was then advised by him that he had found an envelope containing $4,000 in this deposit box, and he asked her "if she felt that this was the money which Miss Duling had given her." There immediately followed the allegation in regard to the letters written on August 6, 1946, hereinbefore referred to, but which were neither made exhibits to the answer nor introduced in evidence and are no part of the record before us. ██ The answer then proceeds to allege that at the termination of the conversation at the funeral home, the said Charles Duling agreed that a gift of this sum of money had been made by the decedent to such claimant, Mrs. Hutchins; and that he, as agent for the decedent had been designated and appointed to make the gift effective; that as a consequence he agreed that he would pick up the envelope at his hotel which contained the $4,000 and deliver it to her when they should meet again at the funeral home later in the evening; and that all of this was accordingly done.

The foregoing allegations of the answer of this claimant, if the same could be considered as evidence in view of the fact that an answer under oath was not waived, would not support the theory that this fund belonged to her by virtue of a gift from Miss Duling in her lifetime, since there was no delivery of the money prior to the death of Miss Duling, and any agency on the part of Charles Duling in that behalf to complete the gift by the delivery was revoked by the death of the alleged donor. Wheatley v. Abbott, 32 Miss. 343; Allison v. Allison, 203 Miss. 20, 33

So. (2d) 619; 38 C. J. S., Gifts, Sec. 60(b), p. 848; Am. Jur., Gifts, Sec. 30, pp. 747-748. Cf. Yates' Estate v. Alabama-Mississippi Conference Association, etc., 179 Miss. 642, 176 So. 534, and Comfort v. Smith, 198 Miss. 152, 21 So. (2d) 584. In fact, it is conceded in the brief of counsel for the said claimant that the alleged gift was ineffectual. Therefore, contrary to the facts stated and sworn to in the answer filed by the claimant, Mrs. Hutchins, she must rely, and does rely, upon the fact that this fund became the property of Albert and Charles Duling at the death of their sister, Miss Duling, under the joint tenancy agreement. But the said claimant has denied in her answer ''that either of the said brothers of Miss Lorena Duling, had any title whatsoever to said sum of money,'' and alleges that same ''was given to her by Miss Lorena Duling during her lifetime, and that the decedent's brothers, Charles H. Duling and Albert Duling, were duly appointed and constituted as decedent's agent or trustee to make said gift effective upon decedent's death through delivery to respondent of the sum of money which the said Charles H. Duling accordingly delivered to her.''

It is true that under Section 1281, Code of 1942, and the case of Lindeman's Estate et al v. Herbert et al., 188 Miss. 842, 193 So. 790, 'adherence to the strict rules of pleading is not required in proceedings in matters testamentary and of administration and in similar cases; but the difficulty with the position of this claimant in now relying on a gift from Charles Duling to her of his own property and that of his brother is that the only competent proof in the case has affirmatively disclosed that he did not intend to make a gift from himself and his brother to the claimant, but was undertaking to complete an alleged, but invalid, gift from his deceased sister to her. In other words, as opposed to the averments of her answer, the claimant now asserts that since either of the survivors of the joint tenants had the right to withdraw the money from the deposit box, the one who withdrew

the same had the right not only to give away his part thereof, but also to bind the other by a gift of the entire fund.

However, the answer to the foregoing contention is that there is no competent testimony in the record as to what transpired between Charles Duling and this claimant, except the testimony of the executor, who related what Charles said to him on the occasion of his return to Jackson after the funeral. That testimony affirmatively discloses as aforesaid that Charles Duling was not attempting to make a gift of money from himself to the claimant, but was undertaking to complete an alleged gift from his sister to the claimant, made during her lifetime and not completed prior to her death; that he acted in good faith under the mistaken belief that he had a right to complete the alleged gift in accordance with what Mrs. Hutchins had stated to be the wishes of his deceased sister. Under the stress of the circumstances immediately following the death of his sister and the lapse of years between the execution of the joint tenancy agreement and the time of the funeral, it is evident that Charles Duling did not have in mind his right and that of his brother Albert to retain the fund as the two surviving joint tenants thereof, and that he did not intend to make a gift thereof to the claimant as coming from him and his brother; and since there is no proof that the claimant was other than a comparative stranger to him, there appears no reason for his wanting to deliver the $4,000 to her except under a mistake of fact that the same had been given to the claimant by his sister in her lifetime.

The burden of proof was upon the claimant to prove by clear and satisfactory evidence that the fund had been given to her under a completed gift from Miss Duling, or that Charles Duling, now deceased, intended to make a gift to her from himself and his brother. Stewart v. First National Bank and Trust Co., 192 Miss. 355, 5 So. (2d) 683.

The trial court awarded $2,000 of the fund in question to Albert Duling upon the correct theory that the joint tenancy agreement controlled and that this fund was no part of the assets of the estate of Miss Duling. ▆▆ The general rule of law seems to be that in instances where a joint tenancy has been created by clear and unambiguous agreement, and the evidence of the existence of a contrary intention is not present, the courts have held that a true joint tenancy has been created with respect to the contents of a safe deposit box and that the surviving tenant becomes vested with title thereto. The annotator in 14 A. L. R. (2d) 948, has this to say: "The cases gathered in this section (of the annotation) present the naked question of whether or not persons can by contract or declaration purposely fasten survivorship to effects kept in a safe deposit box. By the preponderance of authority they can." The binding effect of such agreements on the parties thereto is sustained by the following cases: Young v. Young, 1932, 126 Cal. App. 306, 14 P. (2d) 580; Brown v. Navarre, 1946, 64 Ariz. 262, 169 P. (2d) 85; In re Gaines' Estate, 1940, 15 Cal. (2d) 255, 100 P. (2d) 1055; In re Koester's Estate, 1936, 286 Ill. App. 113, 3 N. E. (2d) 102; In re Watkins' Estate, 1940, Sup., 104 P. (2d) 389, Id., 16 Cal. (2d) 793, 798, 108 P. (2d) 417; 12 Am. Jur. 747, Contracts, Sec. 227.

The cases of In re Lewis' Estate, 194 Miss. 480, 13 So. (2d) 20, and Stephens et al. v. Stephens, 193 Miss. 98, 8 So. (2d) 462, dealt with deposits of funds to the credit of the depositors on the books of the bank, and not the contents of a deposit box; and it may be that Section 5205, Code of 1942, is applicable only to deposits shown as credits on the books of a bank but which question we do not here decide since a decision thereon is not necessary to the disposition of this case.

▆▆ The chancellor awarded the other $2,000 to the claimant, Mrs. Hutchins; he was of the opinion that while Charles Duling had no authority to give away the share belonging to his brother Albert (since he had the

right to withdraw the fund only for the benefit of both of them) he had nevertheless "surrendered and abandoned" his own share to the said claimant. We are of the opinion, however, that if Charles Duling were still living, he would be entitled to recover, jointly with his brother Albert, the fund in question, and that his sole surviving heir at law would be so entitled, for the reason that under the proof in the record before us the adverse claimant of the fund failed to meet the burden of proof required of her in establishing either a valid gift thereof from Miss Duling or a free and voluntary gift of the fund to her from the said Charles Duling. Nor do we think that he knowingly "abandoned" his right to a share of this fund, since all of the proof shows that he acted upon the insistence of the claimant that she was entitled to the fund by virtue of a gift from Miss Duling, whereas the fund either belonged to him and Albert Duling under and by virtue of the joint tenancy agreement or to the Old Ladies Home under and by virtue of the residuary clause in the last will and testament of the deceased. We think that the joint tenancy agreement controls, and that the fund did not therefore become a part of the assets of the estate to be administered under the will.

The decree of the trial court in its entirety is adverse to the Old Ladies Home, and said claimant gave notice to the court reporter to transcribe the testimony, but it did not execute an appeal bond, although it has filed a cross-assignment of error and brief on this appeal. However, we do not deny relief to the Old Ladies Home on the ground thus stated, but on the ground that the fund is controlled by the joint tenancy agreement and not by the last will and testament of the deceased. Moreover, the notation on the envelope in which the $4,000 was contained clearly denotes that this was a special deposit for safekeeping for some purpose on behalf of the joint tenants; and we think some weight should be given to the fact that it was not mentioned in the will of Miss Duling, executed on September 1, 1948, and that the claimant,

Mrs. Hutchins, was not mentioned as a beneficiary under the will.

We agree with the trial court that the reference in the will "together with any other cash that I may possess" had reference to a checking account of approximately $700 then belonging to Miss Duling in another bank; and we think the court was also correct in holding that under and by virtue of the joint tenancy agreement the $4,000 was no part of the assets of the estate. This being true, however, it was error for the court to order that this fund so paid into court be turned over by the clerk to the executor instead of remaining in the registry of the court, pending the outcome of this litigation.

It follows, therefore, that the decree of the trial court must be affirmed in part, that is to say, wherein it holds that Albert Duling is justly entitled to one half of the $4,000, and that the same must be reversed and a decree rendered here in behalf of the appellant, Mrs. Kittie R. Duling, for the remaining $2,000 as sole surviving heir at law of Charles Duling deceased, because of the error in awarding $2,000 of said fund to the claimant, Mrs. Hutchins, although the latter claims under her cross-appeal that she is entitled to the entire fund of $4,000.

Affirmed in part, reversed in part, and decree here for the claimants, Albert Duling and Mrs. Kittie R. Duling.