# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CA-01432-SCT

*IN RE: ADMINISTRATION OF THE ESTATE OF JOHN RAMMIE ABERNATHY, JR., DECEASED*

### CONSOLIDATED WITH

### NO. 1999-CA-01433-SCT

*IN RE: ADMINISTRATION OF THE ESTATE OF JOHN RAMMIE ABERNATHY, JR., DECEASED*

### CONSOLIDATED WITH

### NO. 1999-CA-01506-SCT

*IN RE: ADMINISTRATION OF THE ESTATE OF JOHN RAMMIE ABERNATHY, JR., DECEASED*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/17/1999 |
| TRIAL JUDGE: | HON. TIMOTHY E. ERVIN |
| COURT FROM WHICH APPEALED: | ALCORN COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | GREG E. BEARD |
| | B. SEAN AKINS |
| ATTORNEY FOR APPELLEE: | PHIL R. HINTON |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS AND ESTATES |
| DISPOSITION: | AFFIRMED -01/25/2001 |
| MOTION FOR REHEARING FILED: | 1/31/2001; denied 3/8/2001 |
| MANDATE ISSUED: | 3/15/2001; corrected: statutory penalty awarded |

**BEFORE BANKS, P.J., SMITH AND COBB, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. This case comes to this Court on appeal from the Alcorn County Chancery Court. The chancellor ruled that no clear and convincing evidence was established to create a resulting trust from the will of Frances G. Abernathy. In a consolidated case, with Sue McLellan, the chancellor ruled there was no presumption in favor of a joint tenancy with regards to a safety deposit box. Aggrieved by the chancellor's findings, Bruce and Sandra Griffin appeal, along with Sue McLellan. In this consolidated case, the following issues are raised on appeal to this Court:

### I. WHETHER THE ISSUE OF CONSTRUCTIVE TRUST WAS PROPERLY BEFORE THE LOWER COURT?

**II. WHETHER THE CHANCELLOR ERRED BY FINDING THAT THERE WAS NOT CLEAR AND CONVINCING EVIDENCE TO ESTABLISH A TRUST THEREBY DENYING THE IMPOSITION OF AN EQUITABLE TRUST?**

**III. WHETHER THE CHANCELLOR ERRED IN FINDING THAT THE DEPOSIT BOX RENTAL AGREEMENT PRECLUDED THE EXISTENCE OF A JOINT TENANCY FORMED OUTSIDE OF THE TERMS OF THE CONTRACT?**

¶2. We hold that because John Rammie Abernathy failed to execute his own last will and testament his estate will pass through intestate succession. We also hold that no right of survivorship as joint tenants was created in favor of Sue McLellan as to the safe deposit box. We affirm the chancellor.

## STATEMENT OF THE FACTS

¶3. Frances G. Abernathy was a widow and mother of one child, John Rammie Abernathy, Jr. She died on October 22, 1997, survived by her son and two brothers. Ms. Abernathy had executed a will on August 5, 1985. The will left everything to her son, John Rammie. Also, in a paragraph labeled Item IV, Ms. Abernathy stated "I do hereby give, devise and bequeath all of my estate, both real, personal and mixed to my son, John Rammie Abernathy, Jr. It is to be specifically *understood and agreed* that none of my brothers are to receive anything from my estate." (emphasis added). At the time the will was executed, Ms. Abernathy had two living brothers.

¶4. A month after Ms. Abernathy passed away, John Rammie filed the purported will of his mother with the Chancery Court of Alcorn County. Before her estate was closed, John Rammie died intestate on August 7, 1998, leaving no spouse and no children. Through intestate succession, the living brothers of Frances Abernathy would inherit her estate and that of her son.

¶5. Ms. Abernathy originally had three brothers, Billy Griffin, Tillman Griffin, and Bruce Griffin. Bruce Griffin passed away before Ms. Abernathy made her will in 1985. Billy and Tillman were specifically addressed in her will, as they were the only living brothers she had at the time the will was executed.

¶6. The appellants, in the first case, are the children of Ms. Abernathy's deceased brother, Sandra Griffin South ("Sandra") and Bruce Griffin, Jr. ("Bruce"). The Appellee is one of Ms. Abernathy's brothers who was referred to in Item IV of her will, Billy Griffin. Sandra and Bruce argue that a constructive trust, more specifically, a resulting trust should be created and that they, along with the other cousins of John Rammie, should be the beneficiaries of that trust. In other words, they argue that Frances Abernathy's will created a trust with John Rammie as a trustee. John Rammie breached the trust by not creating his own will that would exclude his uncles from inheriting the estate. For this reason, they argue that a resulting trust should be created by the court. The lower court held that no constructive trust had been proven by clear and convincing evidence. Aggrieved by those findings, Sandra and Bruce appeal to this Court.

¶7. The second case that has been consolidated into this case appeal deals with appellant McLellan. Sue McLellan, became acquainted with John Rammie in October of 1995. He was a patient at North Mississippi Medical Center after he had been injured in an automobile accident. McLellan was a nurse in the orthopedic unit and was in charge of caring for John Rammie. McLellan and John Rammie became close friends while he was in the hospital and remained good friends even after his release.

¶8. After John Rammie's mother passed away, McLellan moved into the Abernathy home in December of 1997. She lived there for six months and cared for John Rammie. While she was living there, Rammie showed her where he kept the keys to his lock boxes and instructed her to retrieve the contents and use the money however she needed to if anything ever happened to him. McLellan moved out of the Abernathy house in June of 1998 and continued to visit John Rammie on weekends.

¶9. On July 10, 1998, John Rammie requested the Deposit Guaranty National Bank to add Sue McLellan's name to the lock box held at the bank. The box contained several thousand dollars in cash, documents, and jewelry. John Rammie met with Ann Rickman ("Rickman") who was a bank employee and the one who always handled his business at the bank. Rickman explained to John Rammie that if McLellan's name were added to the box, she would have the right to remove any of the contents without any notice to him. John Rammie understood and the box was then titled "John Rammie Abernathy or Sue McLellan." The rental agreement was signed in the presence of bank employees by both McLellan and John Rammie.

¶10. On August 7, 1998, John Rammie Abernathy, Jr. died intestate. McLellan claims that she is entitled to the contents of the safe deposit box. The lower court held that there was no presumption of a joint tenancy in regards to the contents of the safe deposit box. For this reason, McLellan appeals to this Court.

## DISCUSSION OF LAW

¶11. "This Court must determine if effect was given to the testatrix's intent when reviewing the decision of the chancellor." *In re Estate of Homburg*, 697 So.2d 1154, 1157 (Miss. 1997) (citing *Tinnin v. First United Bank*, 502 So.2d 659, 663 (Miss. 1987)). This Court has held that it is the responsibility of the courts to respect the intent of the testatrix. *In re Estate of Williams*, 672 So.2d 1173, 1175 (Miss. 1996).

¶12. A constructive trust is one that arises by operation of law against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. *Saulsberry v. Saulsberry*, 223 Miss. 684, 690, 78 So.2d 758, 760 (1955).

¶13. Furthermore, as the final appellate court in Mississippi, our standard of review of findings of fact, including those regarding a constructive trust, is limited in that we must not set aside a chancellor's findings of fact so long as they are supported by substantial credible evidence. *Allgood v. Allgood*, 473 So.2d 416, 421 (Miss. 1985). However, this Court conducts a de novo review of all questions of law. This includes those regarding the applicability of a constructive trust. *Seymour v. Brunswick Corp.*, 655 So.2d 892 (Miss.1995); *Harrison County v. City of Gulfport*, 557 So.2d 780, 784 (Miss.1990).

¶14. Also, the issue of whether a joint tenancy was created with regards to a rental agreement raises a question of law. Of course, this Court conducts a de novo review on questions of law. *Tucker v. Hinds County*, 558 So.2d 869, 872 (Miss. 1990).

## I.

¶15. The first question presented to this Court is whether the issue of constructive trust was ever properly before the lower court. Billy Griffin, brother of Frances Abernathy, asserts that the appellants' complaint did not raise the issue of constructive trust. As this Court has previously stated, "[w]hile M.R.C.P. 8 has

eliminated the technical forms of pleadings required in years past, notice pleadings are still required to place the opposing party on notice of the claim being asserted. No magic words are required by the Rules of Civil Procedure." *Estate of Stevens v. Wetzel*, 762 So.2d 293, 295 (Miss. 2000). Also, this Court has held that pleadings only have to provide sufficient notice to the defendant of claims and grounds upon which relief can be granted. *Dynasteel Corp. v. Aztec Indus., Inc.*, 611 So.2d 977, 984 (Miss. 1992).

¶16. In the case sub judice, the complaint provided the necessary facts to place Billy Griffin on notice of the constructive trust claim. The complaint provided that the Last Will and Testament of Frances Abernathy should be honored and that her brothers should not be allowed to inherit from her estate due to the express provisions in her will. This Court finds that this issue is without merit. Based on the pleadings, the defendants were prepared and put on notice for the theory of constructive trust to be raised. Therefore, the issue of constructive trust was properly before the lower court.

## II.

¶17. Sandra and Bruce allege that the chancellor erred in holding that there was no clear and convincing evidence to establish a constructive, resulting trust. They argue that the Last Will and Testament of Frances G. Abernathy, along with a deposition of Chancellor John C. Ross, was sufficient to satisfy the standard of proof. We hold that the chancellor was correct in holding that a resulting trust should not be established.

¶18. This Court has stated that "the surest guide to testamentary intent is the wording employed by the maker of the will. . . ." *In re Estate of Homburg*, 697 So. 2d at 1157 (citing *Tinnin*, 502 So.2d at 663. Additionally, this Court has held that both constructive and resulting trusts are creatures of equity. *Church of God Pentecostal, Inc. v. Freewill Pentecostal Church of God, Inc.*, 716 So.2d 200, 206 (Miss. 1998). "A constructive trust is one that arises by operation of law against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds legal right to property which he ought not, in equity and good conscience, hold and enjoy." *Sojourner v. Sojourner*, 247 Miss. 342, 353, 153 So.2d 803, 807 (1963) (citing 54 Am.Jur., Trusts, § 218). This Court has also defined resulting trusts as:

> implied by law from the acts and conduct of the parties and the facts and circumstances which at the time exist and surround the transaction out of which it arises. Broadly speaking, a resulting trust arises from the nature or circumstances of consideration involved in a transaction whereby one person becomes invested with a legal title but is obligated in equity to hold his legal title for the benefit of another, the intention of the former to hold in trust for the latter being implied or presumed as a matter of law, although no intention to create or hold in trust has been manifested, expressly or by inference, and there ordinarily being no fraud or constructive fraud involved.

*Church of God Pentecostal, Inc.*, 716 So.2d at 207 (citing 76 Am.Jur.2d Trusts §166 (1992)). A resulting trust is basically an "intention-enforcing trust." *Id.* In other words, a resulting trust is designed to give effect to the actual intention of a party although that intention was not directly expressed. *Simmons v. Simmons*, 724 So.2d 1054, 1056 (Miss. Ct. App.1998).

¶19. In her will, Frances Abernathy, expressly stated that "[i]t is to be specifically understood and agreed that none of my brothers are to receive anything from my estate." Although she did not expressly create a trust, her intent to exclude her brothers from her estate was obvious. However, her intention was satisfied

when John Rammie inherited all of her estate. When John Rammie inherited this estate, the estate became his own. At that point, it was John Rammie's responsibility to prepare a will that would dispose of his estate in accordance with his wishes.

¶20. The burden of proof in establishing that a resulting trust should be created is on the proponent of the will. The proponent must establish the facts by clear and convincing evidence. *Shumpert v. Tanner*, 332 So.2d 411, 412 (Miss. 1976). We find that such clear and convincing evidence is not apparent from the facts of this case.

¶21. The chancellor held that, after reading Ms. Abernathy's will, he believed that there was not clear and convincing evidence to establish a resulting trust. He said that upon Frances Abernathy's death, her entire estate passed to her son, John Rammie. John Rammie died intestate; therefore, John Rammie's estate will pass through intestate succession. We agree.

¶22. Although it is clear that, for some reason, Frances Abernathy was adamant about excluding her brothers, a resulting trust should not be imposed on John Rammie's estate. Since a resulting trust is an "intention-enforcing trust," we would need to know John Rammie's intention, and that intention here is silent. John Rammie had approximately ten months after his mother's death to prepare his own will. Unfortunately, he did not.

> While the law recognizes that there is no method known to the law by which to make people prudent . . ., every person must be presumed to know the law, and the absence of some misrepresentation or illegal concealment of facts, the person must abide by the consequences of his contracts and actions . . . [I]n the absence of fraud, deceit, or fiduciary relations of some kind, the court cannot relieve a person from the consequences of his acts merely because he has not acted prudently or diligently . . .

*McNeil v. Hester*, 753 So.2d 1057, 1067 (Miss. 2000). For these reasons, we agree with the chancellor that Frances Abernathy's estate passed to John Rammie. John Rammie did not execute a will, and his estate will pass through intestate succession.

### III.

¶23. Lastly, the suit by Sue McLellan against the Abernathy estates was consolidated into the case sub judice. Sue McLellan asks this Court to determine whether the chancellor erred in finding that the deposit box rental agreement precluded the existence of a joint tenancy.

¶24. The general rule established by this Court is that where a joint tenancy has been created by a clear and unambiguous agreement, and where there is no evidence to dispute that agreement, this Court will hold that a true joint tenancy exists with respect to the contents of a safe deposit box. *Duling v. Duling's Estate*, 211 Miss. 465, 479, 52 So.2d 39, 45 (1951). Our Court has held that the distinguishing characteristic of a joint tenancy is the right of survivorship. *Vaughn v. Vaughn*, 238 Miss. 342, 349, 118 So.2d 620, 622 (1960). However, courts continue to hold that people must, by contract, purposely fasten survivorship rights to items kept in a safe deposit box.[1] *Duling*, 52 So.2d at 45.

¶25. Our Court addressed a similar issue in *Madden v. Rhodes*, 626 So.2d 608 (Miss. 1993). There, Madden, a nurse, who was a hospice volunteer, was taking care of an elderly couple. *Id.* at 610. Madden went to their home at least twice a week and stayed for periods of four to six hours each visit. *Id.* at 611. The couple gave Madden several gifts over the period of time while she cared for them. *Id.* Madden was

also given a key to their home, was shown where a hidden cash box was located, and was shown where important documents were kept. *Id.* Madden's name was put on a safety deposit box agreement with Merchants Bank. *Id.* at 612. In this case, the bank's policy was to set up these accounts as "joint accounts-with right of survivorship" unless otherwise specified. *Id.* The Court held that "absent the unrebutted presumption of undue influence, Madden would have been entitled to the contents of . . . the . . .lock box, in [its] entirety." *Id.* at 617. Finally, the Court affirmed the lower court's judgment that Madden did not overcome the presumption of undue influence and was not entitled to the contents of the box.

¶26. The case sub judice is distinguishable from *Madden*. In our case, John Rammie went to the Deposit Guaranty National Bank to add Sue McLellan's name to his safety deposit box agreement. The branch manager, Ann Rickman, fully advised Mr. Abernathy that by adding a person's name to the account, they would have equal rights to the box. Mr. Abernathy informed Ms. Rickman that he would maintain both keys to the deposit box. Ms. Rickman also testified that she made it clear to Mr. Abernathy that he was not, by his actions, giving Sue McLellan the contents of the box, but was merely giving her access to the box. In the actual safety deposit box rental agreement, paragraph 10 states that "[i]f the Lessee consists of two or more persons as Joint-Tenants, it is acknowledged and agreed that said Joint-Tenancy is created and exists solely with respect to the use and occupancy of the herein described safe deposit box, and does not extend to, nor attempt to create an interest in, the contents of said safe deposit box." Additionally, there was testimony by Sue McLellan that, even after she moved out of the Abernathy home, Mr. Abernathy kept both keys to the box at his house at all times. The rental agreement did not create survivorship rights.

¶27. McLellan argues that the contract itself did not prevent a joint tenancy, it simply did not create one. McLellan also cites to *Madden* for the proposition that a joint tenancy was created in this case. However, in *Madden*, our Court held that "where a joint tenancy has been created by a *clear and unambiguous agreement*, and the evidence of the existence of a contrary intention is not present, the Courts have held that a true joint tenancy has been created with respect to the contents of a safe deposit box and the surviving tenants become vested with title thereto." *Madden*, 626 So.2d at 616 (citing *Duling*, 211 Miss. at 479, 52 So.2d 45).

¶28. In the case at bar, the agreement does not *clearly* and *unambiguously* create a joint tenancy. In fact, the agreement clearly and specifically states that it does not create an interest in the contents of the safe deposit box. It appears that Deposit Guaranty's form was poorly drafted. It did refer to the Lessees as Joint-Tenants but specifically stated that no rights are to be created in regards to the contents of the box. Our Court has held that a distinguishing characteristic of a joint tenancy is the right of survivorship. In other words, Deposit Guaranty seems to have mistakenly referred to McLellan and Abernathy as joint tenants when, in fact, no rights of survivorship were actually created.

¶29. We hold that the contract did not create a joint tenancy with regard to the contents of the safe deposit box. It did, in fact, specifically prevent the creation of survivorship rights. Also, the record shows that Ann Rickman, branch manager of Deposit Guaranty, did inform Mr. Abernathy that he was *not* giving McLellan the contents of the box but simply giving her access to the box. For this reason, it is not necessary for us to move to the next step of undue influence because a joint tenancy was never clearly and unambiguously created. We hold that the lower court was correct in finding that a joint tenancy did not exist as to the contents of the safe deposit box, and it should therefore be affirmed as to this issue.

## CONCLUSION

¶30. Frances Abernathy's estate passed to John Rammie Abernathy. John Rammie failed to execute his own last will and testament. Therefore, his estate will pass through intestate succession.

¶31. We also hold that no right of survivorship as joint tenants was created regarding the contents of the safe deposit box. For this reason, McLellan is not entitled to the contents. The judgment of the lower court is affirmed.

¶32. **AFFIRMED.**

**PITTMAN, C.J., BANKS, P.J., MILLS, WALLER, COBB AND DIAZ, JJ., CONCUR. McRAE, P.J., CONCURS IN RESULT ONLY. EASLEY, J., NOT PARTICIPATING.**

1. *See also* ***Brown v. Navarre***, 169 P.2d 85 (Ariz. 1946); ***In re Watkins' Estate***, 108 P.2d 417 (Cal. 1940); ***In re Gaines' Estate***, 100 P.2d 1055 (Cal. 1940); ***Young v. Young***, 14 P.2d 580 (Cal. Ct. App. 1932); ***In re Koester's Estate***. 3 N.E.2d 102 (Ill. App. Ct. 1936).