169 P.2d 85

**BROWN et al. v. NAVARRE et al.**

No. 4815.

Supreme Court of Arizona.

May 13, 1946.

Kramer, Morrison, Roche & Perry, L. V. Rhue, and Chas. D. McCarty, all of Phœnix, for appellants.

Lynn M. Laney and Grant Laney, both of Phœnix, for appellees.

Fennemore, Craig, Allen & Bledsoe and Henry W. Allen, all of Phœnix, amici curiæ.

STANFORD, Chief Justice.

We will style the appellants the plaintiffs and appellees, defendants, as they appeared in the trial court.

The two plaintiffs Sue Navarre Brown and Lavage Navarre, are the children of Leonce T. Navarre and Mae Navarre who were divorced. Leonce Navarre received the sum of $7,000 in cash in the settlement of the property rights by reason of the divorce. Thereafter he married the defendant Ernestine Navarre. The defendant Mabel Riddle, also known as Mrs. Lawrence Riddle, as we understand the pleadings, is either a sister or sister-in-law of Ernestine Navarre. Leonce T. Navarre was married to the defendant Ernestine Navarre in December, 1943, and Leonce T. Navarre died on October 4, 1944.

Leonce T. Navarre rented from the Phœnix Savings Bank and Trust Company of Phœnix, Arizona, a safety deposit box. Later the lease agreement for the box was amended to include the name of defendant Mabel Riddle. The following language appears in the lease agreement:

"It is hereby declared that all property of every kind, at any time heretofore or hereafter placed in said box, is the joint property of both lessees and upon the death of either passes to the survivor."

Two keys were given by the bank to the box in question, one to Leonce T. Navarre and one to Mabel Riddle. Each had access to the box independently of the other. The box contained the following properties:

Two $25 War Savings Bonds issued to Lawrence Leonard Riddle or Mabel G. Riddle.

One $250 War Savings Bond issued to Leonce T. Navarre, payable on death to Mrs. Mae Navarre.

A life insurance policy issued to Mabel G. Wolfe, payable to Lawrence Leonard Riddle.

A government life insurance policy issued by the United States to Lawrence Leonard Riddle.

$6400 in United States Currency.

$3.90 in war savings stamps.

The birth certificate of Lawrence Leonard Riddle.

A watch.

Upon the death of Leonce T. Navarre, Ernestine Navarre applied for letters of administration of his estate and represented in his petition that the value of his estate did not exceed $400.

Mabel Riddle executed a power of attorney to Ernestine Navarre authorizing the latter to open the safety deposit box and remove the contents. Apparently the amount of cash on hand in the bank in the safety deposit box at the time of the death of Leonce T. Navarre was $6400, and the two plaintiffs herein, as children of said Leonce T. Navarre, claim said sum as a part of their father's estate and that the same should also be subject to administration.

It is the claim of defendants Ernestine Navarre and Mabel Riddle that said sum belongs to Mabel Riddle and that she may give it to Ernestine Navarre, or do as she likes with it.

The complaint in this case was filed in the early part of January, 1945. On the 16th day of January, 1945, defendants filed a motion for summary judgment, and supporting said motion was an affidavit by H. J. Coerver, chairman of the Board of Directors of the Phœnix Savings Bank and Trust Company. Thereafter the trial court rendered its judgment in favor of the defendants. From said judgment the plaintiffs take this appeal.

Plaintiff's sole assignment of error is:

"The trial court erred in granting defendants' motion for summary judgment, and

in rendering judgment in their favor thereon, because (1) the facts alleged in the verified complaint, and as supplemented by the affidavit filed in support of the motion for summary judgment, do not entitle the defendants to judgment in their favor, and (2) the intent to create a joint tenancy cannot be determined upon an affidavit in support of a motion for summary judgment."

The said assignment is followed by the following propositions of law:

"1. In order to constitute a joint tenancy, four requisites must exist, namely: The tenants must have one and the same interest; the interest must accrue by one and the same conveyance; they must commence at one and the same time; and the property must be held by one and the same undivided possession. In other words, there must be four unities: (1) Unity of interest, (2) unity of title, (3) unity of time and (4) unity of possession. If anyone of these elements is lacking, the estate will not be one in joint tenancy. Hence, where two or more persons acquire an individual interest in property at different times or by different conveyances, the estate created is not joint tenancy, or the unity of time or the unity of conveyance would be disregarded were this to be called a joint tenancy.

"2. The construction of a lease of a safe deposit box or two or more persons depends upon the facts and circumstances of the particular case. The use of the words 'either or the survivor' does not necessarily create a joint tenancy.

"3. A joint tenancy cannot be created by the owner of property to himself and another because unity of title and unity of time are lacking in the estate created in the two grantees and therefore a tenancy in common results.

"4. A gift of inter vivos first asserted after the death of the alleged donor will be subjected to the closest scrutiny by the courts.

"5. The doctrine of survivorship is not a favorite of the law.

"6. The question of intent of the parties cannot be determined upon motion for summary judgment where their rights or actions are susceptible of more than one interpretation."

Under appellants' proposition of Law No. 1 they cite 14 Am.Jur., P. 81 and quote from the case of Siberell v. Siberell, 214 Cal. 767, 7 P.2d 1003. Appellants also cite the case of McDonough v. Portland Savings Bank, 136 Me. 71, 1 A.2d 768.

From 14 Am.Jur., Cotenancy, Par. 7, we quote:

"In order to constitute a joint tenancy, four requisites must exist, namely: The tenants must have one and the same interest; the interests must accrue by one and the same conveyence; they must commence at one and the same time; and the property must be held by one and the same

undivided possession. In other words, there must be four unities: (1) Unity of interest, (2) unity of title, (3) unity of time, and (4) unity of possession. If any one of these elements is lacking, the estate will not be one in joint tenancy. Hence, where two or more persons acquire an individual interest in property at different times or by different conveyances the estate created is not joint tenancy, for the unity of time or the unity of conveyance would be disregarded were this to be a joint tenancy."

Plaintiff's second proposition of law is:

"The construction of a lease of a safe deposit box to two or more persons depends upon the facts and circumstances of the particular case. The use of the words 'either or the survivor' does not necessarily create a joint tenancy."

Plaintiffs quote from our case of McNabb v. Fisher, 38 Ariz. 288, 299 P. 679, 681, which is a case where the administrator McNabb, who brought an action against the son of deceased and The Valley Bank to recover from the bank a balance of deposits made a short time before the death of the deceased. The deposit was made in the name of both deceased and his son and the account was payable to either or the survivor. Following is plaintiffs' quotation from said case:

"As indicated, the intention of the depositor is controlling. If the intention to make a gift is clear, definite, and certain, the courts have not permitted a divided control of the deposit to defeat the gift. Sometimes intention may be gathered from the statement accompanying the deposit and sometimes from the acts of the parties and the attendant circumstances. This vital point must depend upon the particular facts in each case."

Plaintiffs also submit the case of Millman v. Streeter, 66 R.I. 341, 19 A.2d 254, 257. The action was brought in the trial court by Millman, who was the administrator of the heirs of the estate of a Dr. Sheffield Smith. Bertha Streeter claimed the sum of $12,000 which was placed by Smith in a lock box rented from the Citizens Safe Deposit Company. The box was hired and payed for by Dr. Smith, but was registered in the names of both Smith and Streeter under the following agreement:

" 'We agree to hire and hold Safe No. 7179 in the Citizens Safe Deposit Co.'s vault, as Joint Tenants, the survivor or survivors to have exclusive right of access thereto for any purpose including right to remove contents in case of death of either, and either to have power to appoint a Deputy. Either of the tenants has the right to surrender the safe.

" 'We acknowledge a receipt from the Citizens Safe Deposit Company covering rent of within described safe and agree to the rules and regulations as printed thereon and to such reasonable amendments or additions thereto as may be hereafter adopted We also acknowledge receipt of two keys.

" 'Signed Bertha E. Streeter

" 'Signed Sheffield Smith.' "

We quote from the case, in part:

"She now argues that the money which was thus placed in the box belonged to her because a joint tenancy therein had been created by the above agreement; and that such agreement must be accepted as conclusive evidence of the existence of such tenancy. We cannot determine from the transcript whether this argument was made to the trial justice as clearly as it is now made to us. However, if we assume that it was so made and that the trial justice overlooked or misconceived it, the principal question is whether that agreement with the Citizens Safe Deposit Company conclusively created, as between Dr. Smith and the respondent, a true joint tenancy in the contents placed in the box by the doctor.

"In our opinion the agreement, by itself, did not create a true joint tenancy. The law in this state recognizes that a joint tenancy may be held by two or more persons in personal as well as real property. General Laws 1938, chapter 431. See Industrial Trust Co. v. Scanlon, 26 R.I. 228, 231, 58 A. 786, 3 Ann.Cas. 863. However, in the absence of any other controlling statute, a true joint tenancy has always been characterized by the existence of all the four unities of time, title, interest and possession.

"Under this agreement, the company had no title, interest, or possession in the money which it could transfer to the tenants at the time of the execution thereof. Only the safe deposit box was then in its control to lease to them. Nor does the agreement purport to use the company as a conduit through which the contents of the box were transferred to the alleged joint tenants so as to vest in both of them the same title, interest and possession.

"The agreement, as between the tenants, does not effectuate a true joint tenancy in the safe itself, which we have called the box, much less in its contents. Following their agreement in the first sentence of the first paragraph, which is merely 'to hire and hold Safe No. 7179 * * *, as Joint Tenants, * * *,' they expressly stipulate in the very next sentence of that paragraph: 'Either of the tenants has the right to surrender the safe.' "

From Green v. Comer, 193 Okl. 133, 141 P.2d 258, 261, submitted by plaintiff, we quote:

"Printed forms of deposit slips and other forms containing language of the purport above indicated are frequently used by banks in connection with joint accounts for the principal purpose of affording protection to the bank in case of withdrawals by one named co-depositor after the death of another, without any reference to the rights or arrangements of the depositors among themselves. They appear in instances where the actual arrangement between the depositors does not contemplate the right of survivorship at all. For this reason the courts are reluctant to construe them as instruments of conveyance creating a joint interest and the right of survivorship, espe-

cially where the fund on deposit was furnished by only one of the parties. Generally speaking, the courts look beyond the arrangement with the bank to determine whether the gift of a vested joint interest was intended. * * * "

■ Although the law laid down in the case we shall presently quote does not have to do with deposit boxes as in the instant case, it does lay down the rule that is involved herein, and in our case of Phoenix Title & Trust Co. v. King, 58 Ariz. 477, 121 P.2d 429, 432, we said:

"The legal question before the court is whether the method which he took to carry out his wishes had that effect as a matter of law. The case presents the not unusual situation where the owner of property desires to determine its disposition before his death but to postpone the taking effect of such disposition until afterwards. There is a great deal of misunderstanding among the laity, and even some members of the profession, as to how this may be done. The case of McNabb v. Fisher, 38 Ariz. 288, 299 P. 679, 681, lays down the law on a situation much like that found herein very completely as well as concisely, as follows:

" '* * * We think the deduction made from the decisions upon that question by the author in 28 Corpus Juris, 664, § 64, is about correct. It is as follows:

" 'Where a person deposits money in a savings bank to the credit of himself and another, and payable to the order of either or the survivor of them, with the intention of making a gift, such deposit vests in the donee a joint interest with the depositor in the fund, and upon the death of the depositor the survivor is entitled to the amount then on deposit. The controlling question always hinges upon whether the owner of the money intended to make a gift, or whether the account was entered in joint form for other purposes. The intention to make a present gift of a joint interest in such deposit may appear in the statement of the depositor, or it may be shown by his acts and the attendant circumstances. The mere opening of a joint account, each having an equal right to draw, does not, in and of itself, establish a gift."

" 'As indicated, the intention of the depositor is controlling. If the intention to make a gift is clear, definite, and certain, the courts have not permitted a divided control of the deposit to defeat the gift. Sometimes intention may be gathered from the statement accompanying the deposit and sometimes from the acts of the parties and the attendant circumstances. This vital point must depend upon the particular facts in each case.

* * * * * *

" 'If, however, it be granted that the donative language of the father imported an intention on his part to give outright to the son some interest in the deposit, at most it would consist of that portion left after the father's death. If the intention was that the gift should take effect only after the

death of the father, it would be ineffectual, because that would be an attempted testamentary disposition of property, which can be accomplished only by means of a valid will.' "

In short in the McNabb case, supra, quoted within the case of Phoenix Title & Trust Company v. King, supra, the holding is that the mere placing of a deposit in the joint names is insufficient to make a gift. In the instant case there was a deposit box, a key given to Mabel Riddle and the affidavit shows that both separately and together it was entered into by both of the parties signing the contract.

In the affidavit of H. J. Coerver, chairman of the Board of Directors of the Phoenix Savings Bank and Trust Company, where the deposit box was held, he stated:

"That at the time said lease agreement was made said Leonce T. Navarre and said Mrs. Lawrence Riddle were each given a key to said safe deposit box by said bank that would unlock said safe deposit box and permit each of said persons to enter the same; that after said lease agreement had been so executed said Leonce T. Navarre and Mrs. Lawrence Riddle opened and obtained access to said box, both together and separately; and that each of them at all times had equal access to said safe deposit box; * * *"

No opposing affidavit was filed by the plaintiff following the affidavit of H. J. Coerver. Our Sec. 21-1212, A.C.A. 1939,

provides in reference to summary judgments:

"The motion shall be served at least ten (10) days before the time specified for the hearing. The adverse party prior to the date of hearing may serve opposing affidavits. * * *"

In our own recent case of Cress v. Switzer, 61 Ariz. 405, 150 P.2d 86, 88, we said in adopting the construction placed on this subject in another case:

" ' * * * A summary judgment should never be given until the facts are clear and undisputed. If there is a controversy on a factual question, judgment should be withheld until proof has been made.' "

In Cress v. Switzer, supra, there was an answer filed. In the instant case no answer was filed and no controverting affidavits, as stated, were filed by the plaintiffs to the affidavit that was filed as a basis for summary judgment.

A recent case which is of importance to us here is In re Winkler's Estate, 232 Iowa 930, 5 N.W.2d 153, 155. We quote:

"Under our holdings, however, that the possession of one would be the possession of both, it would seem unimportant that the book remained in the safety deposit box. The administrator urges in support of his views the fact of delivery and possession. We do not think any manual delivery necessary and in many instances would hardly be possible, or at least not practicable. If the instrument executed was valid, then the pos-

session of the deposit or the book evidencing the deposit of either joint tenant was the possession of the other and it would be immaterial as to who held the actual manual custody. Martin v. Fritz, 194 Iowa 740, 750, 190 N.W. 514; Tucker v. Tucker, 138 Iowa 344, 345, 116 N.W. 119. In re Halaska's Estate, 307 Ill.App. 183, 30 N.E.2d 117; Abegg v. Hirst, 144 Iowa 196, 122 N.W. 838, 138 Am.St.Rep. 285."

"* * * Here the form of deposit, and the contract between the parties, in our view, indicated what their plain language expresses, that there was a joint ownership. If not so created, then it is difficult to imagine any form of words which would do so, and we would be forced to conclude, contrary to a long line of precedents, that a joint ownership in personal property can not be created."

Section 39-110, A.C.A. 1939, is:

"Right of survivorship abolished.— Where two (2) or more persons hold property jointly and one (1) joint owner dies before severance, and the grant or devise does not expressly vest the estate in the survivor, the interest in the estate of the owner dying shall not survive to the remaining joint owners but shall descend to the heirs of the deceased joint owner as though his interest had been severed and ascertained."

In the case of In re Baldwin's Estate, 50 Ariz. 265, 71 P.2d 791, 795, this court said: "* *.* It should not be overlooked on the one hand that the doctrine of survivorship is not a favorite of the law, in fact, has been abolished in this state in most instances, section 986, supra, and upon the other, that the community property principle is too deeply rooted in the policy of this state to permit it to be set aside except in those cases in which the law clearly permits it and the parties so intend."

So joint tenancy by agreement may be created.

Section 71-122, A.C.A.1939, provides:

"Estates in common—Joint tenancies.— All grants and devises of real property made to two (2) or more persons create estates in common and not in joint tenancy, except grants or devises in trust or to executors or to husband and wife. A grant or devise to two (2) or more persons may, however, by express words, vest the estate in the survivor upon the death of a grantee or devisee."

It is the contention of the plaintiffs that inasmuch as the record heretofore shows that there was a great deal of other property commingled with the cash in the sum of $6400 that that would defeat the gift of that sum by Navarre to Mabel Riddle. Our common sense teaches us that it would not be proper to permit a thing of that kind to defeat the intentions of the parties in the purchase of a safe deposit box, and that for many reasons. One is that either party to the contract might take in valuable personal property of a friend or the property of a friend might

be taken in mutually by the parties to the contract and it certainly should not defeat their aim to have a contract as the one intended in this case. This theory is supported by the case of Young v. Young, 126 Cal. App. 306, 14 P.2d 580.

The case of Matthews v. Moncrief, 77 U.S.App.D.C. 221, 135 F.2d 645, 648, 149 A. L.R. 856, is one which pertains to a survivor's right to the proceeds of a savings account. The appellants were brothers and sisters and heirs at law of Mary J. Davidson and they instituted a suit to establish a trust or certain funds on deposit with the appellees. Perpetual Building Association in the name of the appellee Laura F. Moncrief, surviving owner of the joint savings account in the name of heirs and the decedent. Appellees filed a motion to dismiss the complaint alleging, inter alia, that it contained no allegation entitling the appellants to relief. The District Court dismissed the complaint on that motion and the appeal was taken by the heirs. The court said:

"* * * We think it highly significant that we could discover no case wherein *both parties had signed an instrument which contained language of joint account and a survivorship clause,* where the right of the donee-survivor to the fund was denied. In fact, to repeat ourselves, we have been able to find but one case in which both parties had signed the agreement of deposit where the right of the donee-survivor has been denied, and in that instance, the deposit card contained neither a survivorship clause nor words of joint account. Thus, while the existence of a deposit card with language of joint account, *and* including a survivorship clause, *and* signed by both donor and donee, is not essential in order to obtain a ruling favorable to the donee-survivor, the presence of all of these factors makes that outcome more certain, just as the absence of one or more of them may render the donor's acts less equivocal and subject his written purpose to parol modification.

"Although the allegation that the account might have been established only as an arrangement of convenience was considered in but three of the twenty cases holding for the donee-survivor, the forceful and final language employed in the opinions of the other cases made the absence of any such specific allegation immaterial. In many of these decisions, the expressed rationale has been that the deposit card is a contract or novation between the bank and both depositors, and that the donee-survivor takes not only as donee, but under the binding agreement negotiated between the bank and himself. In other cases the transfer has been treated simply as a gift. Under either view, however, the courts have agreed that the question of the intention of the donor is material, but they have held that when such intention is expressed in a written instrument which says, in plain terms, that the deposit is the joint property of both, and that it is to go upon

the death of either to the survivor, such an expression of intention is conclusive, and preclusive of all parol contradiction, except upon the grounds of fraud or mistake. We believe this to be a proper application of the parol evidence rule.

\* \* \* \* \* \*

"The complaint shows that a contract was signed by both donor and donee with the Perpetual Building Association; that the words of the contract expressed a clear and unequivocal intention in the donor to make the donee a joint owner; and that a clause·of survivorship was included in the instrument. The complaint does not allege fraud or mistake in the execution of the joint agreement. We cannot, under these circumstances, allow Mrs. Davidson's clearly written and plainly expressed purpose to be rewritten after her demise, or deprive the appellee of rights in a contract to which she was a party-signatory. Accordingly, we hold that the District Court rightly considered that the appellants' complaint did not state a cause of action."

In the case of Holt v. Bayles, 85 Utah 364, 39 P.2d 715, 719, it is said in reference to intention:

"Where such intention is clearly expressed in a written contract executed by the parties, which remained unaltered, and there is no fraud, undue influence, mistake, or other infirmity alleged, the question of intention ceases to be an issue and the courts are bound by the agreement.

The uncontradicted pleadings show that neither Navarre nor Riddle had a greater interest in the property than the other but their interest was one and the same; such pleadings show that the interest commenced at the same time; that the property was held by one and·the same undivided possession; that the said parties were not tenants in common but were joint tenants because their joint ownership grew out of the written contract executed by both parties declaring joint ownership with right of survivorship and thus unequivocally established their joint ownership and intention.

The existence of this joint tenancy happening so soon after the divorce of the mother and father of the plaintiffs and the contract by their father being with a stranger to them have made it hard for the plaintiffs to see the other side of this case. Had the joint tenancy existed for many years before the death of their father they no doubt would have seen it in a different light. The law in our state, however, is well settled and we cannot vary from it.

Judgment affirmed.

LA PRADE and MORGAN, JJ., concur.