593 P.2d 663

In re the ESTATE of John Adam
ESTELLE, Deceased.

Elizabeth N. ESTELLE, Appellant,

v.

Michael ESTELLE and Martin Estelle, co-
personal representative of the Estate of
John Adam Estelle, Deceased, Appellee.

No. 13931.

Supreme Court of Arizona,
In Banc.

April 5, 1979.

**110**

Otto H. Linsenmeyer and Marvin W. Manross, Phoenix, for appellant.

John E. Herrick and Edward Doney, Tempe, for appellee.

STRUCKMEYER, Vice Chief Justice.

This is an appeal by Elizabeth N. Estelle from a summary judgment in favor of the estate of John A. Estelle. Jurisdiction was accepted pursuant to 17A A.R.S., Arizona Rules of Civil Appellate Procedure, Rule 19(e). Affirmed.

There is no dispute as to the facts of this case. In March, 1955, John and Elizabeth Estelle acquired title to a house and lot at 318 West State Avenue, Phoenix, Arizona. Title was taken in joint tenancy with right of survivorship. On January 21, 1974, the parties were divorced. The decree of dissolution incorporated by reference a property settlement agreement which provided that their jointly held residence on State Avenue was to be listed with a real estate broker within one week of the signing of the agreement and that it was to be sold to the first person who made an offer within $1500 of the appraised value. The proceeds of the sale were to be divided equally between the two. The agreement further provided that Elizabeth would receive $1.00 per year as spousal maintenance, and that it was binding on the heirs, legatees, legal representatives, and assigns of the parties.

After the divorce, John established his residence at Sun City, Arizona, but Elizabeth continued to reside at the State Avenue property. Approximately two years after the divorce, John Estelle died intestate. There had been an appraisal of the property prior to John's death; however, it had never been listed for sale with a real estate broker.

Elizabeth filed a claim against the estate, asserting full ownership of the home as the survivor of the joint tenancy. She also sought to recover $48,000 in lump-sum spousal maintenance. The personal representatives of the estate, the children of the parties, disallowed both claims. Appellant then petitioned the Superior Court for allowance of her claims. The personal representative counterclaimed for partition of the property and recovery of one-half of the reasonable rental value. On motion for summary judgment, the Superior Court conditionally granted the request for parti-

tion and denied spousal maintenance. By this appeal, appellant seeks to have us declare her sole owner of the property and reverse the order granting summary judgment against her on the issue of spousal maintenance.

The first point in dispute is whether either the property settlement agreement or the decree severed the joint tenancy as a matter of law.

■ A joint tenancy is an estate held by two or more persons jointly, each having an equal right to its enjoyment during his or her life. The distinguishing feature of a joint tenancy is the right of survivorship by which the survivor takes the estate free of any claim of a deceased joint tenant. *Kleemann v. Sheridan*, 75 Ariz. 311, 256 P.2d 553 (1953). Joint tenancy requires the presence of the four unities: time, title, possession, and interest. *Brown v. Navarre*, 64 Ariz. 262, 169 P.2d 85 (1946). Severance or destruction of one or more of these unities results in a destruction of the joint tenancy and the failure of the right of survivorship. See *Smith v. Tang*, 100 Ariz. 196, 412 P.2d 697 (1966). The inquiry is directed to determining whether one or more of the four unities were destroyed or severed when the parties executed the property settlement agreement.

Section 7 of the property settlement agreement provides:

"The residence at 318 West State Avenue is to be sold with the net proceeds divided equally (50–50) between both spouses. Both parties agree that this house shall be listed with a well respected real estate broker within one week of the date of this agreement. Both parties further agree to sell said residence whenever an offer is made which is within $1500.00 of the appraised value of the house. Both parties agree to have an appraisal made by a reputable appraiser selected by their two attorneys. The cost of the appraisal, broker's fees, unpaid taxes, etc. shall be considered as part of the joint expense in selling the house."

Appellee argues that this language did cause a destruction of the tenancy by implication.

■ As a general rule, a joint tenancy may be severed or destroyed either by a direct provision in a contract or by implication if a provision of the contract is inconsistent with the continued existence of the joint tenancy. In *Naiburg v. Hendriksen*, 370 Ill. 502, 505, 19 N.E.2d 348, 350 (1939), the court said:

"We have been unable to find any cases from this jurisdiction on the question of whether a contract to convey operates as a severance of a joint tenancy. However, the courts of other jurisdictions, and leading text writers, are unanimously of the opinion that a contract to convey operates, in equity, as a severance of the joint tenancy. *In re Hewett*, 1894, 1 Ch.Div. 362; *Gould v. Kemp*, 1833, 2 Myl. & K. 304, 309, 39 Eng.Rep. 959, 961; *In re Wilford's Estate*, 1879, 11 Ch.Div. 267; *Burnaby v. Equitable Reversionary Interest Society*, 1885, 28 Ch.Div. 416; *Brown v. Raindle*, 1796, 3 Ves.Jun. 256, 257, 30 Eng.Rep. 998, 999; *Kurowski v. Retail Hardware Mutual Fire Ins. Co. of Minnesota*, 203 Wis. 644, 234 N.W. 900. Tiffany, in his Law of Real Property, volume 1, paragraph 191, at page 638, says: 'It has been decided that in equity a mere contract by one joint tenant to sell his share or to settle it will effect a severance.'"

While the foregoing was said about a contract to convey to a third party, we can think of no reason it should not have application to a contract between joint tenants.

In *Registrar of Wills for Montgomery County v. Madine*, 242 Md. 437, 443, 219 A.2d 245, 248 (1966), the court said:

"Generally it has been held that a contract to convey will terminate a joint tenancy under circumstances in which a transfer of legal title would do so. 2 Tiffany Real Property § 425 (3rd ed. 1939); 2 American Law of Property § 6.2 (Casner ed. 1952); 20 Am.Jur.2d Cotenancy and Joint Ownership § 18 (1965); 48 C.J.S. Joint Tenancy § 4 (1947); *Buford v. Dahlke*, 158 Neb. 39, 62 N.W.2d 252; *In re Baker's Estate*, 247 Iowa 1380, 78

N.W.2d 863; *Naiburg v. Hendriksen*, 370 Ill. 502, 19 N.E.2d 348; *Brown v. Raindle*, 3 Ves.Jun. 256, 30 Eng.Rep. 998 (Ch. 1796); *Gould v. Kemp*, 2 My. & K. 304, 39 Eng.Rep. 959 (Ch.1834)."

In *Wardlow v. Pozzi*, 170 Cal.App.2d 208, 338 P.2d 564 (1959), the California Court of Appeals addressed the issue of whether a property settlement agreement could sever a joint tenancy by implication. There, Nellie and Walter Pozzi acquired title to certain real property as joint tenants. They subsequently leased the property to one Wilson for five years with an option to renew if the lessors did not desire the property for their own use. The Pozzis separated, and Nellie commenced an action for divorce. Prior to the commencement of the divorce action, the parties executed a property settlement agreement which provided in part:

"It is * * * agreed that said party of the first part [Walter] and the party of the second part [Nellie] shall continue to hold as joint tenants the ranch owned by them as such joint tenants, located near Fulton, Sonoma County, California; that said joint tenancy real property is now leased to one Wilson, and that all rents received shall be deposited in First National Bank of San Rafael, at Novato, California, and out of said fund shall be paid all interest, principal and taxes dues [sic] in and about said property. That at the expiration of the Wilson lease (or before) each of said parties shall have the option to purchase the other's one-half interest at an appraised valuation or that the said property shall be sold and the net proceeds divided equally between the said parties * * *." *Id.* at 209, 338 P.2d at 564–5.

Walter died before the option was exercised and before any other disposition of the property. His administratrix, a daughter by a prior marriage, brought an action to quiet title to the property. The defendant, Nellie, demurred to both the complaint and the first amended complaint. The court sustained the latter demurrer without leave to amend. On appeal, the administratrix contended that the property settlement agreement terminated the joint tenancy. The court stated:

"There can be no question but that a joint tenancy may be terminated by express agreement between the joint tenants and an agreement between the tenants which, although it does not expressly terminate the tenancy, is inconsistent by its terms with one or more of the four essential unities of a joint tenancy will also be adjudged to be a severance thereof. 8 Hastings Law Journal 294. Therefore, any interference with the right of survivorship by the terms of the agreement will sever the joint tenancy relationship." *Id.* at 210, 338 P.2d at 565.

The California Court of Appeals found the particular provision inconsistent with the continued right of survivorship.

In the subsequent case of *Rich v. Silver*, 226 Cal.App.2d 60, 66, 37 Cal.Rptr. 749, 752 (1964), the court said:

"Mere informal understandings are sufficient to accomplish transmutation. (See *Title Insurance etc. Co. v. Ingersoll*, 153 Cal. 1, 94 P. 94, and *Tomaier v. Tomaier*, 23 Cal.2d 754, 757, 146 P.2d 905.)"

In the instant case, the agreement provided that the property was to be sold and the proceeds divided equally. This provision is patently inconsistent with the continued right of survivorship. The parties no longer viewed themselves as holding the same "undivided possession." *Brown v. Navarre*, supra, 64 Ariz. at 272, 169 P.2d 85. In order to find the provision for sale compatible with joint tenancy, it would be necessary to assume that the parties intended to continue a joint tenancy in the proceeds of the sale. As the court stated in *Pozzi*, 170 Cal.App.2d at 211, 338 P.2d at 566:

"* * * it is hard to see how two persons in domestic difficulties, and desirous of settling their domestic problems as well as those relating to property, would have intentionally entered into an agreement such as the one before us which would have left the bulk of his or her estate to the other."

We think that the right of survivorship did not continue in their joint property after the execution of the property settlement agreement. *Carson v. Ellis*, 186 Kan. 112, 348 P.2d 807 (1960); *Mann v. Bradley*, 188 Colo. 392, 535 P.2d 213 (1975).

Appellant argues that the decedent was guilty of laches and that his estate is therefore estopped to deny the joint tenancy. Her position is that she was injured by passage of time because when the decree was filed she could have purchased the house herself and thus, as the sole owner, would be entitled to all the appreciated value instead of only 50%. We do not think, however, that after the unity of interest was destroyed, the passage of time or the failure to actively seek a purchaser can change the character of common property to joint tenancy with survivorship.

Appellant contends that the divorce decree should be modified to provide her with future spousal maintenance in a lump-sum payment of $48,000. Appellant's argument is based upon inferences and assumptions from the language of the property settlement agreement. She first points to paragraphs three and seventeen of the agreement. Paragraph three provides:

"Mr. Estelle hereby agrees to pay Mrs. Estelle the sum of $1.00 per year maintenance until such time as Mrs. Estelle shall become eligible for Social Security benefits, at which time no further maintenance payments shall be made."

Paragraph seventeen provides:

" * * * that the agreement shall be binding upon their heirs, legatees, legal representatives and assigns of the parties hereto."

It is appellant's argument that the language of paragraph seventeen would be meaningless unless the parties contemplated that John Estelle's death could occur prior to Mrs. Estelle's obtaining an age which made her eligible for Social Security benefits. Hence it must be concluded that the property settlement agreement does call for the payment of maintenance between the time of John Estelle's death and the time she becomes eligible for Social Security.

Appellee relies on Arizona's statute by which death terminates the obligation to make further payments for maintenance. A.R.S. § 25–327(B) provides:

"Unless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance."

It is plain that the property settlement agreement does not provide for Mrs. Estelle's further maintenance after the death of her husband, except by possible implication. By paragraph sixteen of the agreement, it was to terminate upon incorporation in the divorce decree. This occurred on January 21, 1974. From that time, the agreement had no force or effect separate and independent of the decree and was no longer enforceable as a contract. Plainly the decree which superseded the agreement did not expressly provide for spousal maintenance after John Estelle's death. "Expressly" means in direct or unmistakable terms. Webster's 3rd International Dictionary, Unabridged. The word "expressly" is customarily defined as in *State ex rel. Ashauer v. Hostetter*, 344 Mo. 665, 670, 127 S.W.2d 697, 699 (1939): " 'directly and distinctly stated; expressed, not merely implied or left to inference.' "

For the foregoing reasons, the judgment is affirmed.

CAMERON, C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.