NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

KATHLEEN A. PARMELEY, *Plaintiff/Appellee,*

*v.*

JENNIFER A. CARR, et al., *Defendants/Appellants.*

No. 1 CA-CV 19-0218
FILED 4-23-2020

Appeal from the Superior Court in Maricopa County
No. CV 2016-005865
The Honorable Christopher A. Coury, Judge

**AFFIRMED**

COUNSEL

Copeland Law Offices PLLC, Glendale
By Kirsten L. Copeland
*Counsel for Defendants/Appellants*

Law Office of Paul M. Briggs PLLC, Phoenix
By Paul M. Briggs
*Co-Counsel for Plaintiff/Appellee*

Sternberg & Singer Ltd, Phoenix
By Melvin Sternberg
*Co-Counsel for Plaintiff/Appellee*

---

**MEMORANDUM DECISION**

Acting Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Jennifer M. Perkins joined.

---

**C A M P B E L L**, Judge:

¶1         Frank Parmeley ("Decedent") died during the pendency of a marital dissolution proceeding. At issue in this matter is the distribution of Decedent's life insurance policy ("Policy") and a bank account in his name. The superior court awarded his widow Kathleen Parmeley ("Kathy") $58,561.50 of the insurance proceeds. The remainder of the insurance proceeds were awarded jointly to his daughters Jennifer Carr ("Jennifer") and Kathleen Pascoe (collectively, "Daughters"). The superior court assigned the disputed bank account solely to decedent's daughter Jennifer. We affirm.

**BACKGROUND**

¶2         In 1987, Decedent purchased a $100,000 term life insurance policy from Metropolitan Life and listed Kathy as his "future wife" and beneficiary. During his marriage to Kathy, from approximately 1993 to 2016, the insurance premiums were paid from community property, and Kathy remained the sole beneficiary. At the time of the marriage, Kathy had a son and Frank had two daughters from past relationships. In 1994, the couple had a daughter together.

¶3         In February 2016, Kathy filed for dissolution of marriage in the superior court and shortly thereafter received an order of protection in the superior court based on domestic violence. The initial process server found it difficult to serve Decedent. Kathy contacted Glendale Police to have the order of protection served on March 10, 2016. The assigned officer also served Decedent the dissolution packet, including a preliminary injunction.

¶4         Decedent died before the dissolution was finalized. A probate action was initiated, and Kathy was appointed the informal special administrator. *See* PB2016-003525. Kathy filed the instant civil complaint against the estate for breach of contract, injunctive relief, breach of duty of

good faith and fair dealing, and fraud relating to Decedent's changes to the life insurance beneficiary designation.

¶5            This action proceeded with insurer Metropolitan Life naming Daughters as parties in interest via interpleader. Daughters filed crossclaims for declaratory judgment seeking to determine the parties' respective rights to the Policy proceeds and to Decedent's bank account.

¶6            A two-day bench trial was held in which Kathy, Jennifer, and two witnesses related to the service of the documents testified. Kathy testified regarding their finances as well as to the issue of marital waste, specifically, Decedent's serial refinancing of their real properties and his gambling habits.

¶7            Evidence was introduced that Decedent had a community property Bank of Arizona account, in his name only, with an approximate value of $37,000. The day after Decedent was served the petition for dissolution, he changed the death beneficiary on that bank account from Kathy to Jennifer. Shortly thereafter, he changed the Policy beneficiary from Kathy to Daughters. Kathy did not consent to either change of beneficiary.

¶8            Because the court was obligated to determine the total value of the community property, it examined the entirety of the marital assets and debts. The superior court awarded Kathy what it determined to be her remaining share of the community property ($58,561.50), her attorney fees of $20,000, pursuant to A.R.S. § 12-341.01, and taxable costs. Jennifer was awarded the bank account, and the Daughters divided the remainder of the insurance proceeds. Daughters timely appealed.

## DISCUSSION

¶9            On appeal, Daughters argue (1) the court erred because Kathy had already received at least half of the community property; (2) insufficient evidence supported the court's finding that the Decedent wasted community resources; (3) the court erred by finding the Decedent was served with the domestic relations preliminary injunction, and therefore also erred by finding Decedent violated the injunction when he changed his Policy; and (4) the court erred by awarding Kathy attorney fees.

## I.      Standard of Review

¶10            In reviewing a bench trial, we view the facts in the light most favorable to upholding the court's rulings. *Bennett v. Baxter Group, Inc.*, 223 Ariz. 414, 417, ¶ 2 (App. 2010). The superior court had the opportunity to

judge the credibility of witnesses, and we will not set aside its findings unless they are clearly erroneous. *Castro v. Ballesteros-Suarez*, 222 Ariz. 48, 51, ¶ 11 (App. 2009). Where substantial evidence supports a finding of fact, that finding is not clearly erroneous, even if there may be substantial conflicting evidence. *Id.* at 51–52, ¶ 11.

**¶11**　　　　While we do not reweigh the evidence, we review de novo the court's legal conclusions, including the characterization of property. *In re Marriage of Pownall*, 197 Ariz. 577, 581, ¶ 15 (App. 2000). "A trial court abuses its discretion when it misapplies the law or predicates its decision on incorrect legal principles." *State v. Jackson*, 208 Ariz. 56, 59, ¶ 12 (App. 2004).

## II.　　The Role of Community Property

**¶12**　　　　All property acquired during the marriage is presumed to be community property, except property a spouse acquires by gift, devise, or inheritance. A.R.S. § 25–211(A). Upon the death of one spouse, the community dissolves with half of the value of community assets going to the surviving spouse and the other half passing as designated by the deceased spouse. *Gaethje v. Gaethje*, 7 Ariz.App. 544, 549 (1968).

**¶13**　　　　Generally, a spouse may designate a non-spouse beneficiary regarding an asset, so long as the surviving spouse still receives half of the overall community property and other circumstances do not make the distribution fraudulent or unjust. *In re Kirkus*, 231 Ariz. 334, 337, ¶ 14 (2013) (discussing a retirement account). When the spouses use community funds to pay life insurance premiums, as Kathy and Decedent did here, the surviving spouse has an interest in the proceeds. *See In re Estate of Alarcon*, 149 Ariz. 336, 338–39 (1986).

**¶14**　　　　Because Decedent and Kathy were married at the time of his death, the court was obligated to examine the pool of community property before determining who was entitled to the life insurance proceeds and bank account at issue.

## III.　　The Surviving Spouse's Share

**¶15**　　　　Daughters first argue the court erred in its determination of the value of the community, leading to an erroneous determination of what constituted half of the community. Part of this error, they allege, was excluding the net value of the residence and Kathy's approximately $12,000 each year in survivor benefits from Decedent's Arizona State Retirement

System ("A.S.R.S.") pension. We disagree. As a matter of law, both were properly excluded from the community.[1]

**¶16**        Kathy's testimony and documents in evidence support the finding that the residence was not community property. The residence was purchased by Decedent, Kathy, and Kathy's mother as joint tenants with rights of survivorship. A basic tenet of community property law is that property acquires its character at the time of acquisition. *Potthoff v. Potthoff*, 128 Ariz. 557, 561 (App. 1981). Once the status of the property becomes fixed, "it retains that character until changed by agreement of the parties or by operation of law." *Id.* Here, the property was acquired as joint tenancy with the right of survivorship. Just as the joint tenancy passed to Decedent and Kathy after the death of her mother free from any claim from her mother's estate, the residence automatically passed to Kathy by virtue of Decedent's death free from any claim of the deceased. *See* A.R.S. § 33-431(B); *In re Estelle's Estate*, 122 Ariz. 109, 111 (1979).

**¶17**        The character of the residence did not change from joint tenancy to community property. This is not a situation like *In re marriage of Flowers*, where the joint tenancy occurred as a result of an interspousal gift. 223 Ariz. 531 (App. 2010). Upon Decedent's death, the residence was Kathy's separate property free from any claim from the Decedent's estate. *See* A.R.S. § 25-211(A); A.R.S. § 33-431(B); *Estelle's Estate*, 122 Ariz. at 111.

**¶18**        Decedent also received an A.S.R.S. pension for employment undertaken during the marriage. It was a matured and vested pension right, which included a survivor's benefit. The surviving spouse of a deceased retired member, when married for greater than two years, is entitled to the survivor's benefit in the form of a pension. A.R.S. § 38-846(A). The death benefit ensures that a surviving spouse receives the deferred compensation that the community would have received but for the death. Here, Decedent and Kathy were married from 1993 to 2016, well beyond

---

[1]     Daughters briefly attempt to equate jointly owned assets and community owned assets. We note that the court indicated that the three vehicles were jointly owned and also community property. Property acquired during the marriage, with community funds, regardless of the title of the property, is presumed to be acquired as community property, with exceptions not relevant to these vehicles. A.R.S § 25-211(A). We find that as all vehicles were purchased during the marriage, the vehicles were properly community property. Other than those which have been specifically mentioned, Daughters do not claim that any particular item or account was Decedent's separate property.

the two-year statutory requirement, and therefore, the survivor's benefit became effective upon Decedent's death. That benefit is properly Kathy's separate property.

**¶19** The court correctly determined that neither the residence nor the pension benefits should be included in a determination of the value of the community property. Therefore, we affirm the court's determination.

## IV. Marital Waste

**¶20** Daughters next argue the superior court erred as a matter of law by allowing Kathy's claim for marital waste outside of a dissolution proceeding, which resulted in Kathy receiving a disproportionate share of the community property. We disagree.

**¶21** In determining community property, "[i]n most cases . . . an equal distribution . . . will be the most equitable. However, there may be sound reason to divide the property otherwise." *Toth v. Toth*, 190 Ariz. 218, 221 (1997). An unequal division of property may be equitable in the event of "excessive or abnormal expenditures" by one spouse. A.R.S. § 25-318(C). We review a court's determination of marital waste for an abuse of discretion. *See Kline v. Kline*, 221 Ariz. 564, 573, ¶ 35 (App. 2009).

**¶22** Kathy claimed marital waste based on Decedent's gambling and serial refinancing of their real properties in the dissolution action. The superior court determined that Kathy established $27,447 of her claim for marital waste. Of that amount, charges made in casinos accounted for $17,947, and the remaining $9,500 reflected the sum of three unexplained checks written on their joint account. Kathy testified she had no access to their financial accounts or information during the marriage. She did not have an ATM card, checks, or the passwords to their joint accounts. She explained that she only gained access to the financial information after Decedent died and, for example, did not know the Bank of Arizona account existed until the bank called. She went on to testify that Decedent was gambling heavily in 2014 as he was retired at the time. Regarding the checks, Kathy gave "credible testimony that she [was] unaware of these expenses, and that no documentary evidence" existed to explain them. Decedent withdrew a large amount of money without her knowledge and spent it without her knowledge and she never saw any resulting benefit to the community.

**¶23** Therefore, the value of the wasted property should be added to the value of the existing marital property for purposes of allocation. *Martin v. Martin*, 156 Ariz. 452, 458 (1988). Daughters have cited no Arizona

law to support their conclusion that a waste claim may not, as a matter of law, be raised in a probate matter when considering the value of the community. There is evidence in the record to support the court's findings related to Decedent's marital waste, and for that reason, we affirm this finding.

## V.     Kathy Can Recover Against the Policy and Bank Account

**¶24**          Daughters next assert that even if there was a valid claim for waste, it could not be offset from either the life insurance or the Bank of Arizona account because neither were ever part of Decedent's estate. Both assets were non-testamentary and, they argue, unavailable to creditors. *See* A.R.S. §§ 20-1131(A), 14-6101(A). We are not persuaded.

**¶25**          Kathy was not a creditor. Her community interest began at the time of the marriage. In *In re Monaghan's Estate*, the court stated that the survivor takes one-half of the community property in her own right as owner and not an heir. 71 Ariz. 334, 337 (1951).

## VI.     Whether Kathy Brought a Timely Action

**¶26**          Daughters alternatively argue that even if a determination of waste was legally available and recoverable against these assets, Kathy's claim is barred. Under A.R.S. §§ 14-3803(A)(1) and -3108, the presentation of a claim must be made against an estate within two years of a decedent's death.

**¶27**          When the informal probate was initiated, Kathy, as Decedent's wife, was named the informal special administrator. She also filed a complaint against and accepted service for the estate in PB2016-003525. She then sought a default judgment against the estate in this case.

**¶28**          The court denied the default, finding that Kathy had not named Daughters as parties in this case. Daughters filed a motion in the probate proceeding to have Kathy removed as an informal special administrator, citing a breach of her fiduciary duties. The probate court, sua sponte, not only removed Kathy as the special administrator but declared her not to be a "proper person" for that appointment and determined that

all of her actions in that matter were "void."[2] Daughters never sought the replacement or appointment of a personal representative.

¶29        Daughters essentially assert that the removal of Kathy as the personal representative and voiding of all her actions in the probate matter has the practical effect of there never being a representative for the estate who could be named in the complaint or accept service. Further, they argue any attempt to appoint a personal representative now would put Kathy's waste claim outside the two-year statute of limitations.

¶30        "[P]rocedural defects are waived if not raised and preserved in the trial court." *Medina v. Ariz. Dep't. of Transp.*, 185 Ariz. 414, 418 (App. 1995). A "general appearance by a party who has not been properly served has exactly the same effect as a proper, timely and valid service of process." *Montano v. Scottsdale Baptist Hosp., Inc.*, 119 Ariz. 448, 452 (1978). Further, Daughters subjected themselves to the superior court's jurisdiction for a determination of the distribution of the probate assets by filing an answer and counterclaim. *See Austin v. State ex rel. Herman*, 10 Ariz.App. 474, 476 (1969) ("For a judgment to be valid and binding the party affected must have been legally serve[d] with process or must have voluntarily appeared."). We do not find that any of the procedural defects raised by Daughters alter the result.

## VII.    The Preliminary Injunction/Insurance

¶31        On appeal, Daughters argue that there is no substantial evidence to support the finding that Decedent had actual notice of the preliminary injunction. Alternatively, even if he had notice, A.R.S. § 25-315 does not prohibit the changing of life insurance beneficiaries.

¶32        The superior court found credible the Glendale police officer who testified he personally delivered a package of court documents to Decedent on March 10, 2016, at Decedent's home. The dissolution package included, among other things, the preliminary injunction and petition for dissolution. The court found Decedent had actual notice of the preliminary injunction.

---

[2]    Kathy asserts that the probate commissioner erred in his determination that she had no legal authority on behalf of the estate and decision to void her letters of appointment. The probate matter was never appealed or raised by special action and is not at issue in this appeal.

¶33        The officer testified he specifically recalled the event and was cross-examined about his service of the documents in detail. As further evidence of service, a police record was entered into evidence showing the officer was dispatched on March 10, 2016, to receive the documents from Kathy for service. On the stand, the officer explained why there had been a delay in filing an affidavit of service for the superior court. Given the evidence in the record for Decedent's actual notice of the preliminary injunction, we find no error in this factual finding.

¶34        Daughters assert that changing a life insurance beneficiary is not precluded by the plain language of A.R.S. § 25-315(A) and such an interpretation is inconsistent with the scope and purpose of the injunction. That section reads in pertinent part:

> A. In all actions for dissolution of marriage . . . the court shall . . . issue a preliminary injunction in the following manner:
>
> 1. The preliminary injunction shall be directed to each party to the action and contain the following orders:
>
> (a) That both parties are enjoined from transferring, encumbering, concealing, selling or otherwise disposing of any of the joint, common or community property of the parties. . . .
>
> (b) That both parties are enjoined from . . .
>
> (iii) Removing or causing to be removed the other party or the children of the parties from any existing insurance coverage, including medical, hospital, dental, automobile and disability insurance.

¶35        Ultimately, however, we need not reach the issue of whether a preliminary injunction prevented the change of life insurance beneficiaries, because Kathy was entitled by law to 50 percent of the marital community, including the life insurance benefit, thereby rendering a determination of the preliminary injunction issue superfluous.

## VIII.   Attorney Fees Below

¶36        Daughters assert that the superior court abused its discretion in awarding Kathy a portion of her attorney fees under A.R.S. § 12-341.01. Kathy requested nearly $90,000 in attorney fees from the superior court. Daughters objected, arguing, in part, Kathy was not the successful party,

and the fees requested were "grossly unreasonable." After a detailed analysis, the court awarded Kathy $20,000 in fees.

¶37      The grant or denial of attorney fees is within the discretion of the superior court, and this Court will not overrule such a decision if the record reasonably supports it. *West v. Salt River Agric. Imp. and Power Dist.*, 179 Ariz. 619, 626 (App. 1994). Having affirmed the superior court's community property findings, we find Kathy was the successful party. The award of attorney fees below is affirmed.

## IX.    Attorney Fees and Costs on Appeal

¶38      The parties request attorney fees and costs on appeal pursuant to A.R.S. § 12-341.01 and ARCAP 21. As the prevailing party, we award Kathy her reasonable attorney fees and costs in an amount to be determined after compliance with ARCAP 21.

## CONCLUSION

¶39      For the above stated reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA