NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In Re the Matter of:

DANELL MCPHAUL, *Petitioner/Appellant*,

*v.*

STEPHANIE MCPHAUL, *Respondent/Appellee*.

No. 1 CA-CV 22-0748 FC
FILED 8-22-2023

Appeal from the Superior Court in Maricopa County
No. FC2021-070292
The Honorable Susanna C. Pineda, Judge

**AFFIRMED IN PART; VACATED IN PART AND REMANDED**

COUNSEL

Michael & Casey, Your AZ Lawyer, Phoenix
By Sarah J. Michael, Robert I. Casey
*Counsel for Petitioner/Appellant*

Lincoln & Wenk, PLLC, Goodyear
By Russell F. Wenk, Katherine M. Silvestri
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Judge Paul J. McMurdie joined.

---

**T H U M M A**, Judge:

¶1        Petitioner Danell O. McPhaul (Husband) appeals from a decree dissolving his marriage to Stephanie R. McPhaul (Wife). As applicable here, the decree requires that Husband provide Wife half the equity in a home, that each party be responsible for half of a U.S. Bank/Fry's credit card balance and that Husband pay Wife's attorneys' fees. Because the decree is unclear how the home was held at the time of service of the petition, the allocation of the home and resulting fee award is vacated. Because Husband has shown no error in the allocation of credit card debt, that portion of the decree is affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2        Husband and Wife were in a long-term relationship before marrying in 2017. In 2012, they purchased and financed a home as joint tenants with the right of survivorship. The deed states that they bought the home "not as tenants in common, nor as community property, nor as community property with right of survivorship, but as joint tenancy with right of survivorship."

¶3        Over time, they sometimes fell behind on payments and refinanced the home loan. As applicable here, in 2015 (after they had refinanced the loan at least once), they refinanced the loan by consolidating the home loan with a car loan and, in doing so, receiving about $6,000 in cash. As part of that 2015 refinancing, Wife signed a warranty deed conveying her interest in the home to Husband. The parties would later dispute the reason for Wife's warranty deed. Husband argued Wife did so to receive a benefit by being removed from the repayment obligation and receiving about $6,000 from the refinancing plus other compensation totaling about $7,000. Wife argued the transaction "was done in Husband's name alone due to Wife's lack of income and credit score. However, the parties intended to transfer the title back to both of their names jointly." Title to the home, however, was never transferred back to both of their names jointly.

¶4            In 2017, the couple married. In 2021, Husband petitioned for dissolution, with his petition inconsistently listing the home as being "acquired community property during our marriage" that should be awarded to him *and* as being his "separate property that was brought into this marriage." Wife's response denied that the home was Husband's separate property, affirmatively stating that the home "was purchased by both parties prior to the marriage and is titled in both parties' names as Joint Tenants with Right of Survivorship."

¶5            Later, Husband's proposed resolution management statement stated (1) the home was community property, asking that he be awarded the home with Wife taking an equitable offset "for her portion of a community lien;" and (2) during the marriage, Wife had fraudulently opened a U.S. Bank/Fry's credit card in his name and asked the court to assign her the debt. Wife's response (1) asserted that she "has a community interest in the" home, which was "initially purchased by both parties and subsequently refinanced into Husband's name" and (2) did not specifically reference the U.S. Bank/Fry's credit card debt, but stated "[t]he parties should be equally responsible for" Wife's credit cards.

¶6            The parties' joint pretrial statement included (1) Husband's position that the "parties are in agreement" that he should be awarded the home "with equitable offset to" Wife "for her portion of a community lien," stating Husband paid Wife for her interest in the home during the 2015 refinancing and (2) Wife's position that Husband should be awarded the home "subject to a community lien," adding that the parties "agree Wife has a community interest in the [home], the amount of which remains in dispute" and stating the 2015 refinancing was "to lower their monthly payment" and that "for reasons unknown to Wife, the Warranty Deed transferring the [home] back in to both of their names was never executed and the home has remained in Husband's name alone since." The parties' positions on the credit card debt apparently were unchanged.

¶7            At a three-hour trial in June 2022, Husband, Wife and the loan officer for the 2015 refinancing testified. When Husband was asked whether the 2015 refinancing was to "buy the marital residence and obtain [the home] as your sole and separate property," he answered "Yes." Husband testified Wife received a cash-out amount as a payout for signing the home over to him. Husband also testified that he had "done additional refinances" after the 2015 refinancing, but Wife was not "added back onto the residence," and they had not discussed doing so. Husband also testified that Wife was entitled to around $8,000 of the equity representing her portion of a community lien. *See Drahos v. Rens*, 149 Ariz. 248, 249–50 (App.

1985) (allowing the community an equitable lien for community contributions to separate property).

¶8　　　　Husband testified Wife opened the U.S. Bank/Fry's credit card account in his name, without his knowledge, and that she should be responsible for the debt. On cross-examination, Husband admitted that the charges on the credit card were not waste.

¶9　　　　The loan officer testified that Wife may have been removed from the deed as part of the 2015 refinancing so that the couple might receive a better interest rate. He also testified that email messages with and about Wife at the time (stating "remove and then add [Wife] back on") "kind of indicates, to me, that, you know, that it's not a buyout, you know, at that point, . . . ." The loan officer added that "[o]n two separate occasions" the title company was given instructions to make sure a deed was signed adding Wife's name back the day after the 2015 refinancing but that mistakenly did not occur.

¶10　　　　Wife testified that her 2015 deed to Husband was to allow them to have a better debt-to-income ratio and receive a better interest rate on the refinanced loan. Wife also testified that the car loan consolidation was for a car mainly driven by Husband and the $6,000 in cash received was used to pay off credit card debt. Wife acknowledged that Husband did not know about the U.S. Bank/Fry's credit card, but stated that it was only used for daily expenses of the community during the marriage.

¶11　　　　After taking the matter under advisement, the court issued an 18-page decree. In summarizing the evidence, the decree stated that the parties were not married when they bought the home or at the time of the 2015 refinancing, "and thus, the [home] was never a community asset." The decree stated the home "was Husband's sole and separate property as a result of Wife's conveyance to him of her interest in the residence. However, the intent of the parties was that the property was to be conveyed back to both parties as tenants in common."

¶12　　　　Later, in findings about real property, the decree states that the home "is the separate property of [Husband] with community interest." The next sentence states the home "is jointly owned by the parties as tenants in common. Each party is entitled to 1/2 the equity in the" home. The decree continued, including finding that an equal division of property was equitable, stating

> that the [home] . . . was fully intended to be
> owned jointly by the parties as tenants in

> common. While the residence is deeded to Husband, each party is entitled to 1/2 the equity in the residence. . . . Pursuant to [*Femiano v. Maust*], 248 Ariz. 613 (App. 2020), the Court finds that both parties have contributed to the maintaining of the property and are entitled to an equitable lien for the full increase in equity in the home. [*Drahos*] is inapplicable because neither party can be said to have contributed separate funds to the refinancing of the home. Both contributed to the home when originally purchased and have continued to do so after the 2015 refinancing.

The decree ordered the parties to hire a home appraiser and for Husband to pay Wife half of the equity based on that appraisal.

¶13 In addressing the credit card debt, the decree noted Husband's claim that the card was obtained without his permission, also noting Husband "admits that the expenditures were community in nature." Thus, the decree ordered that each party was responsible for half of the debt.

¶14 The decree also found that Husband had acted unreasonably when he argued that the purpose of the 2015 refinancing was to buy out Wife's equity, adding half the equity at the time of the 2015 refinancing would have been about $40,000, far more than what Husband alleged wife received. Concluding Husband had knowingly made a false statement, the decree awarded Wife her reasonable attorneys' fees as a sanction under Arizona Revised Statutes (A.R.S.) § 25-415(A) (2023).[1]

¶15 This court has jurisdiction over Husband's timely appeal under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

**DISCUSSION**

**¶16** Husband argues the court erred in awarding Wife half the equity in the home because she signed a warranty deed conveying the property to him as part of the 2015 refinancing before they were married. Relatedly, he argues the court erred in awarding attorneys' fees against him because his arguments about the 2015 refinancing were not unreasonable. He also argues the court incorrectly assigned him half of the credit card debt because Wife opened the card in his name without his consent. This court addresses the arguments in turn.

**¶17** The classification of property is reviewed de novo. *In re Marriage of Pownall*, 197 Ariz. 577, 581 ¶ 15 (App. 2000). Apart from property held as community property, "[a] joint tenancy is an estate held by two or more persons jointly, each having an equal right to its enjoyment during his or her life," with right of survivorship. *In re Estelle's Est.*, 122 Ariz. 109, 111 (1979). When property is conveyed to two or more people without otherwise-defining language, it is held as tenants in common, without right of survivorship. A.R.S. § 33-431(A)–(B). Although "a residence which is separate property does not change its character because it is used as a family home and mortgage payments are made from community funds," that circumstance may entitle the community to an equitable lien on the property. *Drahos*, 149 Ariz. at 249–50. "The determination of the amount of the community interest in separate property resulting in an equitable lien is a mixed question of fact and law," meaning this court will "defer to the trial court's factual findings but review legal conclusions de novo." *Saba v. Khoury*, 253 Ariz. 587, 590 ¶ 7 (2022) (citations omitted).

**¶18** The decree describes ownership of the home in several different ways, some of which conflict with the trial record. As noted above, in 2012, the original warranty deed stated that the couple originally bought the home "not as tenants in common, nor as community property, nor as community property with right of survivorship, but as joint tenancy with right of survivorship." Although noting this joint tenancy, the decree also states that "[a]t the time of purchase, the home was purchased by the parties as joint tenants in common."

**¶19** The decree later, in the findings, states that the home (1) "is the separate property of" Husband "with community interest" and (2) "is jointly owned by the parties as tenants in common," also making it separate property (although of both spouses). In imposing a community lien, the decree cites *Femiano v. Maust*, 248 Ariz. 613 (App. 2020) and states "both parties have contributed to the maintaining of the [home] and are entitled

to an equitable lien for the full increase in equity in the home." An equitable lien, however, is a mechanism that allows the community to be reimbursed for its contributions to a spouse's separate property. *Saba*, 253 Ariz. at 590 ¶ 8. Arizona courts have regularly used the *Drahos* formula, refined in *Barnett v. Jedynak*, 219 Ariz. 550 (App. 2009), which accounts for that community contribution and allocates a percentage of the appreciation in value of the separate property to the community based on its contribution. *Saba*, 253 Ariz. at 591 ¶¶ 11–13.

¶20　　　　In *Femiano*, a couple bought a home *during* their marriage, but one spouse disclaimed any interest in that property during the marriage. 248 Ariz. at 615 ¶ 3. Community funds were used for the down payment and all subsequent loan payments. *Id.* The court held that because the community made all the payments, it was entitled to an equitable lien for the full amount of the equity. *Id.* at 617 ¶ 21. Here, unlike *Femiano*, the home was bought five years *before* the marriage, with the down payment and five years of loan payments made with separate funds. And even if *Femiano* applied to these facts, the Arizona Supreme Court recently disapproved of *Femiano,* explaining "the object [of the community lien] is a fair *reimbursement of community funds*, not an *equitable division of property*." *Saba*, 253 Ariz. at 593 ¶ 19. Thus, the community was not entitled to an equitable lien for the full increase in equity based solely on the finding that both parties contributed to maintaining the home.

¶21　　　　The decree is unclear as to (1) how the property was held at the time of the service of the petition for dissolution and (2) whether the conclusion giving each spouse half of the "full increase in equity in the home" was based on a community interest analysis or some other basis. Thus, that portion of the decree addressing the home is vacated and remanded for further proceedings. On remand, the court may first determine how the home was held at the time of the service of the petition for dissolution. On the record presented, the possible options appear to include that the home was held as: (1) joint tenants with a right of survivorship, meaning there was no actual conveyance from Wife to Husband before the 2015 refinancing, *see In re Estelle's Est.*, 122 Ariz. at 111 (discussing four unities required to create joint tenancy); (2) tenants in common, meaning there was a reconveyance from Husband back to Wife after the 2015 refinancing, *see* A.R.S. § 33-341(A); or (3) the separate property of Husband, meaning there was no re-conveyance after the 2015 refinancing. Depending on the outcome of that determination, the court may next award the parties the appropriate interest in the home, subject to the statutory authority of the court in this proceeding. *See* A.R.S. § 25-318(A) (noting, with an exception not applicable here, that "the court shall also

divide the community, joint tenancy and other property held in common equitably, though not necessarily in kind"). Although once those determinations are made, the court may revisit the award of attorneys' fees, the award of attorneys' fees is vacated without prejudice pending the outcome of those determinations.

**¶22** As to the credit card, "spouses have equal management, control and disposition rights over their community property and have equal power to bind the community." A.R.S. § 25-214(B). "[A]ll debt incurred by either spouse during marriage is presumed a community obligation." *Flower v. Flower*, 223 Ariz. 531, 535 ¶ 12 (App. 2010) (citation omitted). Neither party disputes the debt was incurred during the marriage. Wife testified and the court found that the debt was incurred to benefit the community. Although Husband claims Wife applied for the credit card in his name, given the debt benefitted the community, that does not change the analysis. *See Cadwell v. Cadwell*, 126 Ariz. 460, 463 (App. 1980) (noting that "case law has recognized community liability for the fraud of one member" when it benefits the community). Father has not shown that the court erred in finding the debt was a community liability and dividing it equally.

## CONCLUSION

**¶23** The decree's allocation of the home, and the resulting award of attorneys' fees, is vacated and remanded for further proceedings. The decree's allocation the credit card debt equally is affirmed.

